Benjamin HAVARD et al., Appellants,

v.

Robert A. BROWN et ux., Appellees.

No. 16127.

Court of Civil Appeals of Texas, San Antonio.

Jan. 31, 1979.

Rehearing Denied March 14, 1979.

John M. O'Quinn, Riddle, Murphrey, O'Quinn & Cannon, Houston, for appellants.

Petry & Petry, Eugene D. Stewart, Carrizo Springs, for appellees.

## OPINION

MURRAY, Justice.

Robert A. Brown and wife, Naomi Brown, owned a 526.34-acre tract of land located in Maverick County, Texas. On May 24, 1963, appellees conveyed this tract to C. Arleigh King and wife, Mildred Nutt King, by warranty deed. This deed contains a reservation, which reads as follows: "Grantors reserve unto themselves, their heirs and assigns in perpetuity an undivided one-half non-participating royalty (Being equal to, not less than an undivided $\frac{1}{16}$th) of all the oil, gas and other minerals, in, to and under or that may be produced from said land. . . . " This suit was brought to settle a controversy between appellants and appellees over the interpretation of this reservation.

On February 23, 1950, appellees executed an oil, gas, and mineral lease covering this tract. The ten-year primary term on this lease was maintained by the discovery of a gas well prior to 1960 and by the payment of shut-in royalties until April 29, 1965, at which time the lease expired. This lease provided for a royalty payment to lessor of $\frac{1}{8}$th of all the oil, gas, and other minerals produced on said land. In the interim, appellees conveyed by royalty deed on May 17, 1957, one-half of the royalties to John A. Wuensche, Sr., for a term of five years and as long thereafter as production continued in paying quantities. This interest expired on May 17, 1962.

This property changed hands twice before it was conveyed by warranty deed to Benjamin Havard, Fred A. Benson, and A. T. Gill, appellants, on December 15, 1972. In 1973, appellants executed an oil and gas lease with M-Tex, Inc., covering all the premises except the land surrounding the previously drilled and shut-in well, designated as Gill No. 1, which appellants reserved to themselves. The lease to M-Tex, Inc., provided for a royalty payment to lessors of $\frac{3}{8}$ths of all the oil, gas, and other minerals produced from said lands. Four wells were drilled and are being operated by M-Tex, Inc. The Gill No. 1 well is being operated and produced by appellants.

In 1975, M-Tex, Inc., sent to appellees and appellants division orders to approve the payment and distribution of royalties from the production of the four M-Tex wells. These division orders stipulated that appellants were to receive $\frac{5}{16}$ths of the proceeds, and appellees were to receive $\frac{1}{16}$th. Appellees refused to sign the division orders contending that they are entitled to $\frac{1}{2}$ of the $\frac{3}{8}$ths royalty. Appellees further contend that the royalty on the Gill No. 1 well

is ⅝ths; therefore, they are entitled to ½ of the production from this well.

Appellees base these contentions on the language of the reservation that they say is unambiguous and reserves to them ½ of any royalties paid on the production of oil, gas, and other minerals from the land in question. On the other hand, appellants contend that the reservation reserves to appellees only a ¹⁄₁₆th royalty interest. In the alternative, appellants maintain that if the reservation should be interpreted as reserving ½ of any royalties, it was a mutual mistake, and the deed should be reformed. In response to this latter contention, appellees insist that reformation is barred by limitations. Furthermore, appellants alternatively maintain that the reservation in question is ambiguous, and the true intention of the parties from all the evidence was that appellees reserve only a ¹⁄₁₆th royalty.

The jury found as follows:

1. Robert Brown agreed to sell and convey to C. Arleigh King the land in question, including all the mineral and royalty rights, except for an undivided ¹⁄₁₆ th then outstanding non-participating royalty.

2. Any language in the deed from the Browns to Mr. King attempting to reserve to the Browns more than a ¹⁄₁₆th royalty would be contrary to the mutual agreement of the Browns and Mr. King and would be the result of an accident or mistake.

3. At the time of the deed, the intention of the parties was that the Browns reserved by the terms of that deed a royalty equal to ¹⁄₁₆th.

4. The Bowns and the Kings did *not* intend that the deed reserve an undivided ½ non-participating royalty interest.

5. King did not know nor should he have known that the Browns reserved a ½ non-participating royalty interest.

The trial court disregarded these findings and granted appellees' motion for judgment n. o. v. As a result, appellees were awarded a ⁹⁄₁₆th royalty on the M-Tex wells and ½ of the production from the Gill No. 1 well free and clear of any expenses and costs.

■ We believe that the reservation in controversy is ambiguous because the language used is subject to two or more interpretations. *Smith v. Liddell*, 367 S.W.2d 662 (Tex.1963). The ambiguity arises from the inclusion of the parenthetical phrase in the reservation. If the phrase were omitted, the reservation would read, "Grantors reserve unto themselves, their heirs and assigns in perpetuity an undivided one-half non-participating royalty of all the oil, gas and other minerals, in, to and under or that may be produced from said land . . ." This language would reserve a ½ royalty, which gives the grantor ½ of all the oil, gas, and other minerals produced, and not ½ of any outstanding or future royalty. *Watkins v. Slaughter*, 144 Tex. 179, 189 S.W.2d 699 (1945); *Schlittler v. Smith*, 128 Tex. 628, 101 S.W.2d 543 (1937); *Arnold v. Ashbel Smith Land Co.*, 307 S.W.2d 818 (Tex. Civ.App.—Houston 1957, writ ref'd n. r. e.).

It is apparent that by the insertion of the parenthetical phrase "(Being equal to, not less than an undivided ¹⁄₁₆th)" the parties meant something other than a ½ royalty. We believe that it does not plainly and clearly appear from the terms of the reservation that the appellees reserved ½ of the royalties. The phrase "Being equal to" supports appellants' interpretation that the reservation retained a ¹⁄₁₆th royalty. Appellants argue that the additional phrase "not less than" emphasizes that appellees were to receive a ¹⁄₁₆th royalty even if grantees entered into a lease that provided for less than a ¹⁄₁₆th royalty or no royalty. The parenthetical phrase equally supports appellees' interpretation that the reservation retained ½ of the royalties and set a minimum royalty of an undivided ¹⁄₁₆th.

■ Being ambiguous, extrinsic evidence is admissible to show the true intention of the parties. *Home Indemnity Company v. Draper*, 504 S.W.2d 570 (Tex.Civ.App.— Houston [1st Dist.] 1973, writ ref'd n. r. e.);

See *Moore v. Wimberley*, 304 S.W.2d 709 (Tex.Civ.App.—Eastland 1957, no writ) and *Outlaw v. Bowen*, 285 S.W.2d 280 (Tex.Civ. App.—Amarillo 1955, writ ref'd n. r. e.). When extrinsic evidence is admitted and controverted, as it was in this case, the matter of resolving the conflict in the evidence is properly left to the jury. *Noble v. Hunter*, 441 S.W.2d 580 (Tex.Civ.App.— Amarillo 1969, no writ). Here, the jury found that when the deed was executed, the parties intended to reserve a ⅟₁₆th royalty interest. Appellees have attacked this jury finding on the grounds that there is no evidence to support the same. We disagree.

■■■ In deciding a no evidence point, we must view the evidence in the light most favorable to the verdict and disregard all evidence to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Slenderbolic Health Industries, Inc. v. Boridy*, 560 S.W.2d 509 (Tex.Civ.App.—Beaumont 1977, no writ). Mr. King, appellants' predecessor in title, testified that he became interested in buying the property in question and talked to appellees about the terms. Thereafter, they prepared and executed a written contract of sale, which was admitted into evidence as plaintiff's exhibit no. 1. This contract of sale clearly reserves a ⅟₁₆th royalty for appellees. The contract further stipulated that if the outstanding ⅟₁₆th royalty in Mr. Wuensche reverted, then it would be retained by appellees. The deed was prepared by appellees' attorney, and Mr. King did not have anything to do with its preparation or execution. Mr. King, who had no financial interest in the outcome of this case, also testified that during the time between the execution of the contract and the deed, Mr. Brown and he never changed their agreement, and the consideration stated in the contract of sale is the exact consideration that King paid for the property. He thought the deed was in accordance with the contract of sale, and the first time he learned of any contention otherwise was after the filing of this lawsuit. In light of this evidence, we believe that there is sufficient evidence of probative force to support the finding of the jury, and this finding is conclusive and binding on both the trial court and this court. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

In view of the above holding, we do not deem it necessary to pass upon appellants' other points.

We hold that the trial court erred in granting judgment n. o. v. and should have entered judgment on the jury verdict that appellees were entitled to a ⅟₁₆th royalty of all the oil, gas, and other minerals produced from said land. Judgment of the trial court is hereby reversed and rendered that the appellees are the owners of a ⅟₁₆th royalty on the four wells being operated by M-Tex, Inc., and the Gill No. 1 well.