

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-263-CV

RANGE RESOURCES CORPORATION
AND RANGE PRODUCTION I, L.P. AND
STEADFAST FINANCIAL, LLC,
R.J. SIKES, KATHY SIKES,
CHRISTY ROME, GREG LOUVIER,
PAM LOUVIER, AND DACOTA
INVESTMENT HOLDINGS, LLP
AND R. CRIST VIAL

APPELLANTS

V.

BETTY LOU BRADSHAW

APPELLEE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## OPINION ON REHEARING

------------

We deny Appellants' motion for rehearing, but we withdraw our opinion

and judgment of May 8, 2008 and substitute the following.  We affirm.

## I. Introduction

In three issues, Appellants Range Resources Corporation, Range Production I, LP, Steadfast Financial, LLC, R.J. Sikes, Roger Sikes, Kathy Sikes, Christy Rome, Greg Louvier, Pam Louvier, Dacota Investment Holdings, LLP, and R. Crist Vial (collectively "Range") appeal the trial court's partial summary judgment in favor of Appellee, Betty Lou Bradshaw. While the underlying suit brought by Bradshaw involves claims for breach of fiduciary duty and conspiracy, the overarching issue in this interlocutory appeal by agreed order is whether the trial court correctly decided that the reservation in two 1960 deeds was a "fraction of royalty" interest rather than a "fractional royalty" interest. We conclude that the trial court was correct and that the reservation was a "fraction of royalty."

## II. Factual and Procedural History

Bradshaw is the holder of a non-participating royalty interest ("NPRI")[1] in approximately 1,800 acres in Hood County that she inherited from her parents,

---

[1] A non-participating royalty is non-possessory in that it does not entitle its owner to produce the minerals himself. It merely entitles its owner to a share of the production proceeds, free of the expenses of exploration and production. *See Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 789 (Tex. 1995); *Luckel v. White,* 819 S.W.2d 459, 463 (Tex. 1991); *Hamilton v. Morris Res., Ltd.*, 225 S.W.3d 336, 344 (Tex. App.—San Antonio 2007, pet. denied).

J.A. and Lota Fay Driskill.  The Driskills reserved the royalty interest in two deeds that they executed in 1960 (the "1960 Deeds").[2]

By 2006, Appellant Steadfast owned the surface and mineral estates in approximately 1,994 acres in Hood County, of which the Driskills' reserved royalty interests covered 1,800 acres.  Steadfast conveyed the surface estate to Appellant Range Resources Corporation but reserved to itself all of the oil, gas, and other hydrocarbons in the 1,994 acres.  At the same time, Steadfast entered into an oil and gas lease covering the 1,994 acres with Appellant Range Production I, L.P.; the lease provided for a 1/8 royalty.  Steadfast assigned portions of its royalty interest to the following additional Appellants: R.J. and Kathy Sikes, R. Crist Vial, the Louviers, and Dacota Investment Holdings, LLP.[3]

In January 2007, Bradshaw filed suit, alleging that Steadfast breached its fiduciary duty to her by entering into the one-eighth royalty lease with Range Production I, L.P., when Steadfast owed her a duty to secure a one-fourth royalty in the lease.  Bradshaw argued that she was entitled to a one-eighth royalty (1/2 of 1/4 lease royalty), rather than a one-sixteenth royalty (1/2 of 1/8

---

[2] In one deed, the Driskills conveyed approximately 600 acres to Mitchell & Son, a partnership.  In the other deed, the Driskills conveyed approximately 1,173 acres to The Wheatland Retreat, Inc.

[3] Steadfast also assigned portions of its royalty interest to Peter G. Bennis and Roger Sikes.

lease royalty) because, at the time Steadfast executed the lease to Range, the "going royalty rate in Hood County, Texas, was one-fourth."

The parties filed competing motions for summary judgment on whether the 1960 Deeds reserved a "fraction of royalty" or a "fractional royalty" interest. Range argued that Bradshaw's NPRI was a fixed one-sixteenth "fractional royalty" (1/2 x 1/8) and, therefore, no fiduciary duty was owed or breached. Bradshaw contended that the 1960 Deeds provided for a "fraction of royalty," such that her share of royalty could never drop below one-sixteenth but could be greater than one-sixteenth. Thus, if a future lease provided for a one-eighth royalty, she would get a one-sixteenth (1/2 x 1/8) share of production; if it provided for a one-sixth royalty, she would be entitled to a one-twelfth (1/2 x 1/6) share of production.

The trial court agreed with Bradshaw, holding that the royalty interest reserved in the 1960 Deeds was a "fraction of royalty" interest. This interlocutory appeal by agreed order followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (Vernon 2008). The trial court stayed the proceedings below pending our review.

### III. Standard of Review

Neither Bradshaw nor Range contends that the 1960 Deeds are ambiguous. The interpretation of an unambiguous deed is a question of law.

4

*Altman v. Blake,* 712 S.W.2d 117, 118 (Tex. 1986). Accordingly, we review de novo the trial court's construction. *EOG Res., Inc. v. Hanson Prod. Co.,* 94 S.W.3d 697, 701 (Tex. App.—San Antonio 2002, no pet.). When conducting a de novo review, the reviewing court exercises its own judgment and redetermines each issue, according no deference to the trial court's decision. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex. 1998).

### IV. "Fraction of Royalty" versus "Fractional Royalty"

The sole issue in this appeal is one of deed interpretation: whether the royalty reservations in the 1960 Deeds constitute a "fractional royalty" or a "fraction of royalty."

A "fractional royalty" interest entitles the owner to the specified fractional amount stated in the deed of oil, gas, or other minerals produced from the land and remains constant regardless of the amount of royalty contained in a subsequently-negotiated oil and gas lease. *See Tiller v. Tiller*, 685 S.W.2d 456, 458 (Tex. App.—Austin 1985, no writ); Phillip E. Norvell, *Pitfalls in Developing Lands Burdened by Non-Participating Royalty: Calculating the Royalty Share and Coexisting with the Duty owed to the Non-Participating Royalty Owner by the Executive Interest*, 48 ARK. L. REV. 933, 935 (1995).

A "fraction of royalty" conveys a fractional share of the royalty that is contained in an oil and gas lease—it is not fixed, but rather "floats" in

5

accordance with the size of the landowner's royalty contained in the lease and, in addition to the landowner's royalty, the fraction of non-participating royalty also shares proportionally in any overriding royalty interest reserved in the oil and gas lease, and the holder of the executive right owes a duty to the NPRI owner in establishing the landowner's royalty in an oil and gas lease. Norvell, 48 ARK. L. REV. at 935–36. The amount to be paid to the owner is determinable upon the execution of some future lease and is calculated by multiplying the fraction in the royalty reservation by the royalty provided in a lease. *See Winslow v. Acker*, 781 S.W.2d 322, 327 (Tex. App.—San Antonio 1989, writ denied); *Tiller*, 685 S.W.2d at 458.

A. Rules of Deed Interpretation

In construing a deed, our primary duty is to ascertain the intent of the parties by a fundamental rule of construction known as the "four corners" rule. *Luckel*, 819 S.W.2d at 461; *Bennett v. Tarrant County Water Control & Imp. Dist. No. One*, 894 S.W.2d 441, 446–47 (Tex. App.—Fort Worth 1995, writ denied). We do not look for the subjective intent of the parties, which may be conflicting; instead, it is the objective intent, the intent expressed or apparent in the writing, that is sought. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex. 1982). In seeking to ascertain the intention of the parties, we must attempt to harmonize all parts of the deed. *Altman v. Blake*, 712 S.W.2d

6

117, 118 (Tex. 1986).  Even if different parts of the deed appear contradictory or inconsistent, the court must strive to construe the instrument to give effect to all of its provisions.  *Luckel*, 819 S.W.2d at 462.

B. 1960 Deeds' Royalty Reservations

The reservation at issue is contained within three unnumbered paragraphs in each deed, with the controversial portions in italics:

[1] The Grantors herein reserve unto themselves, their heirs and assigns, and except from this conveyance an undivided one-half (1/2) Royalty (*Being equal to not less than* an undivided one-sixteent[h] (1/16)[)] of all the oil, gas and/or other minerals in, to, and under or that may be produced from said . . . land aforesaid, to be paid or delivered to said Grantors, as their own property, free of cost Forever; together with the right of ingress and egress at all times for the purpose of storing, treating, marketing and removing the same therefrom.

[2] Said interest hereby reserved is a Non-Participating Royalty and shall not participate in the Bonuses paid for any oil, gas or other mineral[s] lease covering said land, nor shall it participate in the money rentals which may be paid to extend the time within which a well may be begun under the terms of any lease covering said land.  It shall not be necessary for the Grantors, their heirs, and assigns, to join in the execution of any lease covering said Royalty interest herein reserved, and the Grantee herein, his heirs and assigns, shall have the right to lease said land for oil, gas and other minerals provided, however, that all such leases shall provide for Royalty of *not less than* one-eighth (1/8):

(a) on oil, gas and other minerals, liquid or solid;

(b) Of the net proceeds from the sale of liquid hydrocarbons such as gasoline, butane, protane or from the sale of any other manufactured or processed

7

by-products extracted or recovered from said natural gas or casinghead gas;

(c) Of the net proceeds derived from the sale of all residue gas or its by-products.

[3] In the event oil, gas or other minerals are produced from said land, then said Grantors, their heirs and assigns, shall receive *not less than one-sixteenth (1/16) portion (being equal to one-half (1/2) of the customary one-eighth (1/8) Royalty) of the entire gross production and/or such net proceeds as hereinabove provided* as their own property to be paid or delivered to said Grantors free of all cost from royalty oil, gas and/or other minerals, by-products manufactured or processed therefrom. [Emphasis added.]

C. Analysis

The Texas Supreme Court interpreted a similar clause in *Brown v. Havard*. 593 S.W.2d 939 (Tex. 1980). In that case, a clause in a 1963 warranty deed reserved "in perpetuity an undivided one-half non-participating royalty (Being equal to, not less than an undivided 1/16th) of all the oil, gas and other minerals." *Id*. at 940. After a lease with a 3/8 royalty was executed, the Browns claimed a 3/16 royalty interest. *Id*. at 941. The court concluded that the clause was ambiguous and upheld the jury's finding that the parties' intent was to reserve a royalty equal to 1/16 based on extrinsic evidence. *See id.* at 942; *Havard v. Brown*, 577 S.W.2d 757, 759–60 (Tex. Civ. App.—San Antonio 1979), *aff'd*, 593 S.W.2d 939 (Tex. 1980).

8

The court reasoned that, "[w]ithout the parenthesis, the reservation is either a 1/2 royalty or 1/2 of royalties," that is, a fractional royalty or a fraction of royalty, although it did conclude that the language without the parenthetical would reserve 1/2 of all oil, gas, and other minerals produced, i.e., a fractional interest, and not 1/2 of any outstanding or future royalty. *Brown*, 593 S.W.2d at 942. The parenthetical presented further ambiguity: either (1) the parties intended to reserve 1/2 of the conventional 1/8 royalty, "being equal to" a 1/16, with the "not less than" insuring that the reservation was 1/2 of the conventional 1/8 and that, if the royalty were reduced, the Browns would still receive their 1/16; or (2) the parties intended to reserve 1/2 of the royalties contained in future leases, providing further that such share must not be less than 1/16. *Id*. The majority discounted the second interpretation because it "must ignore the presence of the 'comma' between the phrase 'Being equal to' and the phrase 'not less than an undivided 1/16th.'" *Id*.

Justice McGee, dissenting, stated that the provision was not ambiguous and interpreted the parenthetical as an indication that the Browns had contemplated future leases and had attempted to make sure that their royalty interest would never be less than the 1/16 interest under the current lease, an unambiguous minimum. *Id*. at 946 (McGee, J., dissenting); *see also* Sharon Callaway Dittfurth, *Common Problems in Conveying Oil and Gas Interests*, 13

ST. MARY'S L.J. 825, 830 (1982) (describing the difficulty for the drafter post-*Havard*). Justice McGee hinged this analysis on the words "heirs and assigns in perpetuity" to indicate that the parties intended to reserve a perpetual royalty and not one coincident only with the duration of the existing lease on the property and "not less than an undivided 1/16th" to indicate that the Browns contemplated future leases on the property after the expiration of the current lease. *Brown*, 593 S.W.2d at 946 (McGee, J., dissenting). Furthermore, Justice McGee observed the absence of any language to indicate that the royalty was to be limited to a maximum of, or not more than, 1/16, but also the presence of specific language that the royalty was to be not less than 1/16. *Id*. (McGee, J., dissenting). He noted, "Describing a variable amount as being equal to not less than 1/16 has the same result as describing it as equal to or greater than 1/16," and the absence of a comma between "equal to" and "not less than" did not change that meaning. *Id*. (McGee, J., dissenting).

There are some differences between the facts in *Brown* and the facts in this case: (1) the property in *Brown* was under lease at the time that the reservation was made, (2) there was a comma in the *Brown* reservation between "Being equal to" and "not less than," and (3) the grant included the words "in perpetuity." *See id.* at 940, 942. Here, the property had not been leased at the time Bradshaw's parents made the reservation, there is no

10

separating comma between the "being equal to" and "not less than" clauses, and, instead of just the words "in perpetuity," the 1960 Deeds contain two additional paragraphs that explain what was granted and indicate what was intended.

Paragraph One sets out that the grantors reserved an "undivided one-half (1/2) Royalty . . . of all the oil, gas and/or other minerals in, to, and under or that may be produced" from the land. Without the addition of the parenthetical this first sentence probably reserved only a fractional royalty interest.[4] *See id.* at 942. Paragraph Two clarifies that the interest reserved in Paragraph One is a nonparticipating royalty interest.

Although no lease existed at the time the reservation was created, the reservation clearly indicates that leasing was anticipated: in Paragraph Two, the reservation states that it is unnecessary for the grantors, heirs, or assigns to join in the execution of any leases and excludes them from participating in bonuses or rentals "which may be paid to extend the time within which a well may be begun under the terms of any lease covering said land." Paragraph Three also indicates that leasing was contemplated, stating, "[i]n the event oil,

---

[4] However, the *Brown* majority did recognize that this language could create either a fractional royalty or a fraction-of-royalty. 593 S.W.2d at 942.

11

gas or other minerals are produced . . . then said Grantors . . . shall receive . . . ."

If the absence of the comma renders only one possible interpretation of the parenthetical under *Brown*, i.e., to reserve 1/2 of the royalties contained in future leases, providing further that such share must not be less than 1/16, the floor being set by the parenthetical in Paragraph One, then the reservation is a fraction of royalty. *Brown*, 593 S.W.2d at 942. This conclusion is supported by the dissent's reasoning in *Brown* as well, i.e., the language indicating the anticipation of leasing in Paragraph Two and the inclusion of the parenthetical itself in Paragraph One as contemplating future leases. *Id*. at 946 (McGee, J., dissenting). Paragraph Two also sets out that all leases shall provide for a royalty of not less than 1/8—a floor that would guarantee that the royalty provided (a fraction of royalty) would not be less than 1/16. Finally, the language in Paragraph Three again includes a parenthetical to explain the calculation of the not-less-than-1/16 portion of the royalty received by the grantors, "(being equal to one-half (1/2) of the customary one-eighth (1/8) Royalty) of the entire gross production *and/or such net proceeds as hereinabove provided* . . . ." [Emphasis added.] This language establishes that what was reserved was a floating fraction of royalty and not a fixed fractional royalty.

Construing the deeds as a whole, and harmonizing all parts to give effect to the parties' intent, we determine that a "fraction of royalty" was conveyed.

12

*See Luckel*, 819 S.W.2d at 462. Paragraph One reserves an undivided one-half of royalty for Bradshaw, based on the language reserving "an undivided one-half royalty," interpreted with the parenthetical that immediately follows it, which sets out that the undivided one-half royalty is "equal to not less than an undivided one-sixteent[h] (1/16) of all the oil, gas and/or other minerals in, to and under or that may be produced," and the clarifying language in Paragraph Three, which states that the grantor shall receive not less than one-sixteenth portion "(being equal to one-half (1/2) of the customary one-eighth (1/8) Royalty of the entire gross production and/or such net proceeds as hereinabove provided . . . ." We read this language, en toto, as expressing the intent to establish an interest of a *minimum* one-sixteenth royalty, rather than a fixed one-sixteenth "fractional royalty."

In its motion for rehearing, Range cites the following Texas statutes that use "equal to not less than" to support its argument that the phrase can denote a fixed amount: section 51.302(a)(4) of the government code and section 61.0591(a) of the education code. Range also refers the court to 42 U.S.C.A. § 608(a)(2)(A) (West 2003), and *Neel v. Oliver's Estate*, 44 A.2d 561, 563 (Pa. 1945), to support its argument that the 1960 Deeds' use of "not less than" indicates a fixed amount.

13

However, each of these provisions establishes a baseline and a method of calculation based on different variables, not a specific fixed amount. Section 51.302(a)(4) of the government code, which involves the bond a district clerk is required to provide before beginning the duties of office, merely states that the bond must

> be in an amount *equal to not less than 20 percent of the maximum amount of fees collected* in any year during the term of office immediately preceding the term of office for which the bond is given, except that *the bond may not be in an amount less than $5,000 nor more than $100,000*.

TEX. GOV'T CODE ANN. § 51.302(a)(4) (Vernon 2005) (emphasis added). The statute itself expressly sets out the bond's floor ($5,000) and the ceiling ($100,000), and provides for the *calculation* of a fixed amount based on the amount collected by a particular district—this amount, needless to say, would vary by county. Similarly, Paragraphs One, Two, and Three of the 1960 Deeds establish a floor for the royalty (one-sixteenth) and provide for the calculation of the royalty based on a potentially varying amount of production or lease-royalty size.[5] The other statutory provisions which Range cites operate in a

---

[5] That is, the Grantors reserved "an undivided one-half (1/2) royalty (Being equal to not less than an undivided one-sixteent[h]" of production—Paragraph One; all leases shall provide for royalty of not less than one-eighth—Paragraph Two; and the Grantors shall receive not less than one-sixteenth portion "(being equal to one-half (1/2) of the customary one-eighth (1/8) Royalty) of the entire gross production and/or such net proceeds as

14

similar fashion.[6]  And the case to which Range cites is inapposite.[7]  *See Brown*,

_____

hereinabove provided"—Paragraph Three.

[6]⬆  Section 61.0591(a) of the education code is part of the chapter addressing the powers and duties of the Texas Higher Education Coordinating Board and states that "[t]he legislature shall appropriate to the board *an amount equal to not less than 10 percent of the total appropriations* for base funding of general academic teaching institutions for the purpose of providing incentive and special initiative funding under this section."  TEX. EDUC. CODE ANN. § 61.0591(a) (Vernon 2006) (emphasis added).  42 U.S.C.A. § 608(a)(2)(A) states, with regard to reduction or elimination of Temporary Assistance to Needy Families for noncooperation in establishing paternity or obtaining child support, if the State makes the appropriate findings with regard to noncooperation and the individual does not qualify for good cause or other exceptions, then the State

> (A) *shall deduct* from the assistance that would otherwise be provided to the family of the individual under the State program funded under this part *an amount equal to not less than 25 percent of the amount of such assistance*; and

> (B) may deny the family any assistance under the State program.

42 U.S.C.A. § 608(a)(2)(A) & (B) (emphasis added).  Contrary to Range's argument that these provisions set out fixed amounts, they too merely establish a floor and provide a method of calculating a fixed amount that is dependent on the variables set out in the statutes.

[7]⬆  In *Neel*, the Pennsylvania court had to construe an insurance code provision that contemplated an assessment liability of an insurance subscriber as "*equal to not less than* one additional annual premium or deposit charged." 44 A.2d at 563–64 (emphasis added).  The court concluded that the provision prescribed the ceiling of a subscriber's liability for assessment, and not a floor, based on its "very evident purpose" of making certain that subscribers could not limit the extent of their respective liabilities to anything less than one additional annual premium or deposit charged.  *Id*. at 563.  However, this reasoning does not apply here because the issue is not the limitation of liability (i.e., the amount a subscriber would have to pay), but rather the amount of

15

593 S.W.2d at 946 (McGee, J., dissenting) ("A prudent grantor who reserves a fraction of royalties may wish to ensure that his interest will not fall below a certain minimum. Careful drafting of royalty reservations requires that he recognize that future leases may be executed by his grantee that call for a different royalty than a lease existing at the time of the deed.").

Based on the foregoing, we hold that the reservations in the 1960 Deeds provided for a "fraction of royalty" rather than a "fractional royalty." Therefore, we agree with Bradshaw's interpretation that the language of the 1960 Deeds permits her to share in one-half of whatever royalties may be contracted for, and that her resulting share of production must not be less than one-sixteenth. This interpretation is consistent with the plain language of the 1960 Deeds and gives effect to all of the operative language in the 1960 Deeds so that all of the terms are in harmony. *See Brown*, 593 S.W.2d at 942; *see also Luckel*, 819 S.W.2d at 462; *Altman*, 712 S.W.2d at 118.

---

payment the grantors intended to receive from their reservation.

16

**V. Conclusion**

Having determined that the trial court properly found that the 1960 Deeds provided for a "fraction of royalty," we overrule Range's three issues and affirm the trial court's partial summary judgment in favor of Bradshaw.

BOB MCCOY
JUSTICE

PANEL:  CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

CAYCE, C.J. filed a dissenting opinion.

DELIVERED: August 14, 2008

17


NO. 2-07-263-CV

RANGE RESOURCES CORPORATION                    APPELLANTS
AND RANGE PRODUCTION, I, L.P. AND
STEADFAST FINANCIAL, LLC,
R. J. SIKES, KATHY SIKES,
CHRISTY ROME, GREG LOUVIER,
PAM LOUVIER, AND DACOTA
INVESTMENT HOLDINGS, LLP
AND R. CRIST VIAL

V.

BETTY LOU BRADSHAW                              APPELLEE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## DISSENTING OPINION

------------

I respectfully dissent.  As a matter of law, the two 1960 deeds at issue

reserved a fixed fractional 1/16th non-participating royalty interest.  The

appellee's contention to the contrary requires us to ignore numerous rules of

contract construction, to give no effect to the "being equal to" language in the deeds, and to imply from the "not less than" phrase in the deeds a reservation of interest in favor of the grantor that is more than the plain language of the deeds allows.  I would, therefore, grant appellants' motions for rehearing, reverse the trial court's partial summary judgment, and render judgment that appellee take nothing on her claims against appellants.

JOHN CAYCE
CHIEF JUSTICE

DELIVERED: August 14, 2008

2