02-11-169-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

 

NO. 02-11-00169-CV

 

 


 
 
 Betty Lou Bradshaw
  
  
 v.
  
  
 R.J. Sikes, Roger Sikes, Kathy Sikes, Greg Louvier, Pam
 Louvier, Christy Rome, Dacota Investment Holdings, L.L.P., a/k/a Dacota
 Investment Holdings, L.P., Colorado State Bank & Trust as Custodian of
 the R.J. Sikes IRA Account, R. Crist Vial, IRA Plus Southwest, LLC as
 Custodian of the R. Crist Vial Roth IRA Account, and Range Texas Production,
 L.L.C.
 
 
 §
  
  
  
  
  
 §
  
  
  
  
 §
  
  
  
  
 §
 
 
 From the 355th District Court
  
  
  
  
  
 of Hood County (C2010739)
  
  
  
  
 March 14, 2013
  
  
  
  
 Opinion by Justice McCoy
 
 


 

JUDGMENT

 

          This court has considered the record
on appeal in this case and holds that there was no error in the trial court’s
judgment.  It is ordered that the judgment of the trial court is affirmed.

          It is further ordered that appellant Betty
Lou Bradshaw shall pay all costs of this appeal, for which let execution issue.

 

SECOND DISTRICT COURT OF APPEALS


 

 

 

By_________________________________

    Justice Bob McCoy

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

 

NO. 02-11-00169-CV

 


 
 
 BETTY LOU BRADSHAW
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 R.J. SIKES, ROGER SIKES, KATHY SIKES, GREG LOUVIER, PAM
 LOUVIER, CHRISTY ROME, DACOTA INVESTMENT HOLDINGS, L.L.P. A/K/A DACOTA
 INVESTMENT HOLDINGS, L.P., COLORADO STATE BANK & TRUST AS CUSTODIAN OF
 THE R.J. SIKES IRA ACCOUNT, R. CRIST VIAL, IRA PLUS SOUTHWEST, LLC AS
 CUSTODIAN OF THE R. CRIST VIAL ROTH IRA ACCOUNT, AND RANGE TEXAS PRODUCTION,
 L.L.C.
 
 
  
 
 
 APPELLEES
 
 


 

 

------------

 

FROM THE
355TH DISTRICT COURT OF HOOD COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I.  Introduction

In three issues in this interpleader-based appeal, Appellant
Betty Lou Bradshaw appeals the trial court’s orders granting summary judgment
for, and distributing the interpleaded proceeds to, Appellees R.J. Sikes, Roger
Sikes, Kathy Sikes, Greg Louvier, Pam Louvier, Christy Rome, Dacota Investment
Holdings, L.L.P. a/k/a Dacota Investment Holdings, L.P., Colorado State Bank &
Trust as custodian of the R.J. Sikes IRA account, R. Crist Vial, IRA Plus
Southwest, LLC, as custodian of the R. Crist Vial Roth IRA account, and Range
Texas Production, L.L.C., (collectively, the Interpleader Appellees), after
denying her motion to dismiss for lack of jurisdiction and to abate pending the
resolution of her appeal in cause number 02-10-00369-CV.  We affirm.

II.  Factual and Procedural Background

A.   Prior Appeals

The background of this litigation is set out in Range
Resources Corp. v. Bradshaw (Bradshaw I), 266 S.W.3d 490, 491–92 (Tex. App.—Fort
Worth 2008, pet. denied) (op. on reh’g), and Bradshaw v. Steadfast
Financial, L.L.C. (Bradshaw II), No. 02-10-00369-CV, 2013 WL 530969, at
*1–2 (Tex. App.—Fort Worth Feb. 14, 2013, no pet. h.).

In short, after acquiring the executive right over
property in which Bradshaw owned a nonparticipating royalty interest (NPRI),
Steadfast Financial L.L.C. leased the property to Range Production I, L.P.[2]
for a 1/8 royalty.  Bradshaw I, 266 S.W.3d at 491–92.  Bradshaw sued,
alleging that Steadfast had conspired with Range for a 1/8 royalty in the lease
and an excessive leasing bonus instead of a 1/4 royalty in the lease, thereby
breaching its fiduciary duty to her.  Id.  Bradshaw sued Steadfast,
Range, and several of the Interpleader Appellees—who we referred to as the
Royalty Holders in Bradshaw II[3]—among
others, seeking the difference between the royalty she actually received and
the royalty she would have received had no alleged breach occurred.  Id.;
see also Bradshaw II, 2013 WL 530969, at *2, 26.

Steadfast and some of the Royalty Holders filed a
counterclaim at the outset of Bradshaw’s lawsuit, asking for a declaratory
judgment to define Bradshaw’s NPRI under the applicable deeds as a “fractional
royalty” and to construe the terms of the lease to find that Steadfast did not
owe, and had not breached, a duty to Bradshaw.  They also asked the trial court
to declare that oil and gas production from the property “be distributed by the
oil and gas lessee to each such party in accordance with the interest conveyed
to them by Steadfast Financial LLC.”

The parties filed competing motions for summary
judgment on how to define Bradshaw’s NPRI.  Bradshaw I, 266 S.W.3d at
491–92.  The trial court concluded that her NPRI was a “fraction of royalty,”
and, in an agreed interlocutory appeal from the trial court’s order, we
affirmed this conclusion in Bradshaw I.  Id.

Upon remand, Bradshaw sought to set aside Steadfast’s
transfers of NPRIs to the Royalty Holders, claiming that the transfers were fraudulent
and seeking a constructive trust.  Bradshaw II, 2013 WL 530969, at *2.  Steadfast
and the Royalty Holders, among others,[4]
then moved for summary judgment on whether Steadfast owed Bradshaw a duty.[5] 
Id.  The trial court found that Steadfast did not owe Bradshaw a duty,
and its final summary judgment ordered that Bradshaw take nothing on her causes
of action against all of the defendants, ordered her to pay costs, and stated,
“This judgment finally disposes of all claims and parties and is final and
appealable.  All relief not expressly granted is DENIED.”  Bradshaw’s appeal in
cause number 02-10-00369-CV followed, and she superseded the judgment for costs
by posting a $413 cash bond.

While Bradshaw’s appeal was pending in cause number
02-10-00369-CV, the interpleader events at issue described below took place,
ultimately resolved by the trial court with a summary judgment for the
Interpleader Appellees and distribution of the interpleaded proceeds to them.  On
February 14, 2013, we reversed in part the trial court’s summary judgment in
cause number 02-10-00369-CV, after concluding that Steadfast owed Bradshaw a
duty, and we remanded the case to the trial court for further proceedings.  Id.
at *20, 26.

B.   Interpleader Proceedings

Range filed its original petition in interpleader
after the Interpleader Appellees demanded that it distribute their royalty
proceeds to them after the trial court’s summary judgment in the underlying
case.  The Interpleader Appellees then filed a cross claim, arguing that they
were the rightful owners of the funds based on the fractional royalty interests
that Steadfast had conveyed to them and based on the trial court’s summary
judgment denying Bradshaw’s constructive trust and fraudulent transfer claims
against them.  They asked the trial court to grant Range’s interpleader request,
to enter judgment declaring their entitlement to the funds, and to award those
funds and any future payments attributable to their royalty interests to them.

Bradshaw filed a denial to the Interpleader Appellees’
cross claim, raising the affirmative defenses of res judicata, collateral
estoppel, and issue preclusion, as well as complaining that the trial court
lacked jurisdiction.  She filed a motion to dismiss for want of jurisdiction
and alternatively sought to have the interpleader action abated during the
pendency of her appeal in cause number 02-10-00369-CV.  She did not file a specific
cross claim asserting that she was entitled to the funds at issue.[6]

The trial court signed the order authorizing
interpleader,[7]
and the Interpleader Appellees filed a motion for summary judgment to
“vindicate[ ] their ownership of the interplead funds and determin[e] that any
adverse claim by Betty Lou Bradshaw is barred by [the] res judicata, collateral
estoppel and claim preclusion effect of the take[-]nothing judgment.”  Bradshaw
responded to their summary judgment motion but did not file her own separate
motion for summary judgment.

In the March 16, 2011 order granting summary judgment
for the Interpleader Appellees, the trial court ordered the release of over $3
million in royalty proceeds and provided for the distribution of any future
royalty proceeds to the Interpleader Appellees.  The trial court refused to
allow Bradshaw to supersede that judgment.[8]

III.  Interpleader

Bradshaw argues that the trial court erred by denying
her motion to dismiss the interpleader action for lack of jurisdiction, as well
as by dismissing her motion to abate and by adjudicating the Interpleader
Appellees’ claimed entitlement to the disputed royalty proceeds.  The
Interpleader Appellees respond that Bradshaw lacks standing for this appeal
because she failed to assert her own claim to the funds interpleaded into the
trial court’s registry and that their claim is not barred by res judicata.

A.  Jurisdiction

1.    Standing

We will address the Interpleader Appellees’ allegation
with regard to Bradshaw’s standing for this appeal first.  See Town of
Flower Mound v. Rembert Enters., Inc., 369 S.W.3d 465, 470 (Tex. App.—Fort
Worth 2012, pet. denied) (op. on reh’g) (stating that we review questions of
subject matter jurisdiction de novo); see also Brown v. Todd, 53 S.W.3d
297, 305 n.3 (Tex. 2001) (noting that “standing is a component of subject
matter jurisdiction”).

While the Interpleader Appellees are correct in their
assertion that Bradshaw did not file a specific document entitled “Cross
claim,” the substance of Bradshaw’s various filings in this interpleader
case—rather than their titles—indicate that she asserted a claim to the interpleaded
funds.  See, e.g., 51 Tex. Jur. 3d Motion Procedure § 3
(2008) (“The character of a motion is determined by its substance, not from its
title, caption, or form.  The substance of a motion is determined by its body
and prayer for relief.”) (footnotes omitted).  Further, in their
response to Bradshaw’s motion to dismiss, the Interpleader Appellees
acknowledged that Bradshaw had laid claim to the funds at issue.  See, e.g.,
Olmstead v. Napoli, 383 S.W.3d 650, 651 (Tex. App.—Houston [14th Dist.]
2012, no pet.) (noting that the trial court determined that the interpleader
defendants’ trial briefs were in substance cross-motions for traditional
summary judgment and treated them as such).  And during the February 3, 2011
hearing on Range’s interpleader petition and Bradshaw’s motion to dismiss, when
counsel for some of the Interpleader Appellees asked whether Bradshaw was
“asserting in open court a claim to the funds that are sought to be interpled
today,” Bradshaw’s counsel replied, “Your Honor, we’ve only been doing that
since 2007, the date that we filed our original petition, and we continue to
do that, and we say that those are Ms. Bradshaw’s funds, not the other side’s
funds.”  [Emphasis added.] Therefore, we believe that Bradshaw sufficiently
raised her claim to the interpleaded funds to have standing for this appeal.

2.    Counterclaim

In part of her first issue, Bradshaw asserts that the
trial court lacked jurisdiction to dispose of the merits of the interpleader
action because it had previously denied the Interpleader Appellees’
counterclaim to the disputed royalty proceeds in the underlying lawsuit.  Specifically,
she argues that when the trial court denied “all relief not expressly granted”
in the final summary judgment in that case, it denied the Interpleader Appellees’
counterclaim and that when they did not appeal this ruling, they could not
resurrect this counterclaim as a cross claim in Range’s interpleader action.

In support of this argument, Bradshaw relies on In
re Daredia, 317 S.W.3d 247 (Tex. 2010) (orig. proceeding).  In Daredia,
a credit card company sued both Daredia and Map Wireless, Inc. to recover money
due on three credit card accounts.  Id. at 248.  Daredia answered, but
Map Wireless did not, and the credit card company moved for a default judgment against
Map Wireless.  Id.  The credit card company’s proposed order included
the following Mother Hubbard clause, “All relief not expressly granted herein
is denied.  This judgment disposes of all parties and all claims in this cause
of action and is therefore FINAL,” and the trial court signed it.  Id. 
No one appealed from the judgment.  Id.

Fifteen months later, the credit card company moved
for a judgment nunc pro tunc so that it could proceed against Daredia, the
trial court granted the motion, and we denied Daredia’s petition for writ of
mandamus, concluding that the default judgment order was ambiguous and
interlocutory because it had failed to address the company’s claims against
Daredia, allowing the trial court to retain jurisdiction over the case.  Id. 
The supreme court disagreed, holding that the default judgment’s language was
clear enough to conclude that it was final, and it granted Daredia’s petition
for writ of mandamus.  Id. at 249–50.

While the language in the final summary judgment order
appealed in cause number 02-10-00369-CV makes clear that the trial court
intended its order to be final, Daredia is inapposite here.  First, Range—not
the Interpleader Appellees—filed the interpleader action in the trial court. 
In its petition, Range asked the court to determine to whom it had to pay the royalty
proceeds it had held in suspense during the pendency of the underlying case in
the trial court, and the trial court had jurisdiction to consider Range’s
request, as Range had no ownership interest in those proceeds.[9] 
See Tex. Natural Res. Code Ann. § 91.402(b) (West 2011) (stating
that payments may be withheld when there is a dispute concerning title that
would affect distribution of payments); see also Tex. R. Civ. P. 43; Madeksho
v. Abraham, Watkins, Nichols & Friend, 112 S.W.3d 679, 686 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied) (noting that a post-judgment
interpleader is a new filing and stating that the trial court had to have
jurisdiction to determine ownership of funds tendered into its registry because
it “cannot simply toss the money back out the clerk’s window”); Bryant v.
United Shortline Inc. Assur. Servs., N.A., 984 S.W.2d 292, 296 (Tex.
App.—Fort Worth 1998, no pet.) (noting that the standard of review of a trial
court’s decision to grant a party’s right to interpleader is an abuse of
discretion and that any reasonable doubt about a stakeholder’s right to interpleader
must be resolved in the stakeholder’s favor).

Further, Bradshaw’s counterclaim argument misinterprets
the result of the trial court’s final, take-nothing judgment when viewed within
the case’s context:  At the time that Bradshaw filed her original petition in Bradshaw
I, Steadfast had already assigned to the pertinent Interpleader Appellees—i.e.,
the Royalty Holders—their fractional shares of Steadfast’s royalty interest. 
266 S.W.3d at 492.  The trial court then subsequently addressed via summary judgment
the two grounds in the counterclaim that affected those interests—defining whether
Bradshaw’s NPRI was a “fraction of royalty” or a “fractional royalty,” and
defining Steadfast’s duty to Bradshaw as holder of the executive right.  Id.
at 492, 497–98.  It also incorporated into the final summary judgment its
earlier granting of the motions for summary judgment brought by the Royalty
Holders, who sought summary judgment on Bradshaw’s fraudulent transfer claims
and sought to avoid the imposition of a constructive trust on the proceeds of
the NPRIs they had received from Steadfast.[10] 
See Bradshaw II, 2013 WL 530969, at *3, 20, 26.  When the trial court
granted the final take-nothing judgment against Bradshaw, incorporating its
previous summary judgments for the Royalty Holders, it essentially put the
parties back into their original positions at the litigation’s outset, which
was all that the final portion of the counterclaim sought to achieve.[11]

And although in the final part of her first issue, Bradshaw
contends that when she superseded the judgment for costs in her appeal of the
take-nothing judgment in cause number 02-10-00369-CV, this should have
prevented the trial court from enforcing its earlier judgment, the Interpleader
Appellees are correct by pointing out that this ignores the nature of the
interpleader action here and of the take-nothing judgment itself in the
underlying case.[12]
See Tex. R. App. P. 24.1(a) (setting out the methods by which a judgment
debtor may supersede a judgment to suspend its enforcement against her),
24.2(a)(1) (noting that for the recovery of money, such as costs awarded in the
judgment, the amount of the bond, deposit, or security must equal the sum of
the award); cf. Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West
2008) (providing that a judgment creditor is entitled to aid from a
court of appropriate jurisdiction through injunction or other means in order to
reach property to obtain satisfaction of judgment), § 63.001(3) (West 2008)
(stating that a writ of garnishment is available if the plaintiff has a valid,
subsisting judgment, among other requirements); Madesksho, 112 S.W.3d at
701 n.16 (citing other means by which judgment creditors may reach a
debtor’s assets).  We overrule Bradshaw’s first issue.

B.  Summary Judgment

In her second issue, Bradshaw states that even if the
trial court had the jurisdiction to adjudicate the interpleader action’s merits,
it nonetheless erred by granting summary judgment for the Interpleader
Appellees and ordering the distribution of the interpleaded royalty proceeds to
them when their claim to the disputed royalty proceeds was barred by res
judicata and they did not establish their entitlement to summary judgment as a
matter of law.  Because Bradshaw premises her res judicata argument on the same
counterclaim argument that we have already addressed above, we overrule this
portion of her second issue.

Bradshaw also argues that none of the grounds
presented by the Interpleader Appellees can support the trial court’s judgment.

In their motion for summary judgment, the Interpleader
Appellees argued that the final summary judgment in the underlying case
conclusively established as a matter of law that they were entitled to the
respective funds being held in the trial court’s registry, as well as future
funds payable as royalties attributable to their respective fractional NPRIs,
and that any adverse claims by Bradshaw were barred by the summary judgment in
the underlying case.  To their motion, they attached copies of the royalty
deeds pertaining to the respective NPRIs, as well as copies of the documents
filed in the underlying case:  Bradshaw’s second amended petition, the various motions
for summary judgment, the trial court’s interim summary judgment orders and
final judgment, and Bradshaw’s second amended and restated lis pendens filed
after she appealed the final summary judgment.

“[A] judgment is final for the purposes of issue and
claim preclusion ‘despite the taking of an appeal unless what is called an
appeal actually consists of a trial de novo.’”  Scurlock Oil Co. v.
Smithwick, 724 S.W.2d 1, 6 (Tex. 1986) (op. on reh’g); see also Street
v. Honorable Second Court of Appeals, 756 S.W.2d 299, 301 (Tex. 1988)
(orig. proceeding) (stating that a judgment that is not superseded can be
executed upon regardless of its appellate status);[13]
Am. Gen. Fire & Cas. Co. v. Schattman, 761 S.W.2d 582, 587 (Tex.
App.—Fort Worth 1988, no writ) (noting that in Scurlock, the supreme
court held that judicial policy required that judgments become final for res
judicata, collateral estoppel, and issue preclusion purposes once the trial
court loses plenary power, regardless of whether the judgment is appealed).  In
Hearn, on facts that are very similar to the instant case, the
Fourteenth Court of Appeals relied on Scurlock to conclude that the
trial court did not err by applying collateral estoppel to an interpleader
action while the underlying suit was still pending on appeal.  See
Hearn v. Cox & Perkins Exploration, Inc., No. 14-98-01275, 2000 WL 977372, at *4–5 (Tex. App.—Houston [14th Dist.]
2000, no pet.) (not designated for publication).[14] 
Based on the record before us, we reach the same conclusion, hold that summary
judgment for the Interpleader Appellees was appropriate, and overrule the remainder
of Bradshaw’s second issue.[15]

IV.  Conclusion

Having overruled Bradshaw’s dispositive issues, we affirm
the trial court’s judgment.

 

                                                                             BOB
MCCOY

                                                                             JUSTICE

 

PANEL:  LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

 

DELIVERED:  March 14, 2013









[1]See
Tex. R. App. P. 47.4.





[2]Range
Texas Production, L.L.C. (Range) is the successor of Range Production I, L.P.





[3]That
is, R.J. Sikes, R. Crist Vial, Roger and Kathy Sikes, Greg and Pam Louvier,
Christy Rome, and Dacota Investment Holdings, L.L.P. a/k/a Dacota Investment
Holdings, L.P.  Bradshaw II, 2013 WL 530969, at *1.





[4]The
trial court granted Bradshaw’s motion to consolidate the two interpleader
actions brought by Range, which involved all of the Interpleader Appellees
here, as well as Peter G. Bennis, Cleburne Bible Church, and Gary Humphreys. 
After the trial court ruled on the Interpleader Appellees’ motion for summary
judgment, it granted their motion for severance from Bennis and the others. 
The trial court’s interpleader ruling in that case is now pending in this court
in cause number 02-12-00262-CV.





[5]Steadfast
moved for summary judgment on the basis of duty and estoppel by deed.  Bradshaw
II, 2013 WL 530969, at *3.  The Royalty Holders relied on Steadfast’s motion
and also moved for summary judgment on Bradshaw’s fraudulent transfer claims,
opposing the imposition of a constructive trust on the proceeds of their
royalty interests.  Id. at *1, 23.





[6]In
her reply to the Interpleader Appellees’ response to her motion to dismiss for
want of jurisdiction, Bradshaw stated that her action in the previous case was
“aimed at the damages from the breach of fiduciary duty [by Steadfast] as
embodied in the suspended payments rather than seeking royalty that will never
be Bradshaw’s because it is Steadfast Financial’s one-half (1/2).”





[7]The
trial court also signed orders denying Bradshaw’s motion to dismiss for lack of
jurisdiction and her motion to abate.





[8]The
Texas Supreme Court denied Bradshaw’s June 22, 2011 petition for writ of
mandamus in this case on July 15, 2011.  See In re Bradshaw, No.
11-0468, available at
http://www.supreme.courts.state.tx.us/historical/2011/jul/071511.htm (last
visited Mar. 6, 2013).





[9]Further,
we need not address Bradshaw’s argument in part of her first issue that the
trial court’s judgment here interfered with our jurisdiction over the appeal in
Bradshaw II, as we have already disposed of that appeal.





[10]In
its order granting the Royalty Holders’ second motion for summary judgment, the
trial court expressly stated that Bradshaw should take nothing on her claims
against the Royalty Holders “for imposition of a constructive trust on such
parties’ fractional royalty interests or the proceeds attributable to
production arising from their ownership of a fractional royalty interest in
or to the approximately 1,774 acres the subject of this suit.”  [Emphasis
added.]





[11]Indeed,
in her response to the Royalty Holders’ motions for summary judgment in the
underlying case, Bradshaw acknowledged that she would not have a fraudulent
transfer claim against them if Steadfast had committed no breach of duty owed
to her.  See Bradshaw II, 2013 WL 530969, at *24.





[12]There
was nothing, other than the judgment for costs, for Bradshaw to supersede, as
the trial court’s take-nothing judgment against her left her and the opposing
parties in the same position they had been in prior to her lawsuit.  See
Tex. R. App. P. 24.2(a) (describing the types of judgment that can be
superseded—other than conservatorship or cases involving a governmental
entity—as judgments for recovery of money, real property, and “other”; all
three of these require that there be a judgment debtor); In re
marriage of Richards, 991 S.W.2d 30, 31–32 (Tex. App.—Amarillo 1998, no
pet.) (noting, in divorce appeal, that when a judgment does not provide for the
recovery of money or property in the possession of the other party, there is
nothing for the appellee to execute nor any need of the appellant to supersede
an attempt by the appellee to execute on the decree); see also Robert B.
Gilbreath and Curtis L. Cukjati, Superseding the “Other Judgment,”
12 App. Advoc. 11, 11–13 (1998) (discussing how to handle supersedeas
situations in which judgments for something other than money or property occur;
a take-nothing judgment is not listed in the summary of case law describing
“other judgments” that can be superseded).  Here, because costs were the only
item awarded in the otherwise take-nothing judgment, there was no other
enforcement item to suspend.  In other words, “Nothing comes from nothing. 
Nothing ever could.”  Richard Rogers and Oscar Hammerstein II, Something
Good, on The Sound of Music (1959).





[13]As
discussed above, other than the judgment for costs in the underlying suit,
which Bradshaw superseded, there was nothing for her to supersede from the
take-nothing judgment.





[14]In
Hearn, Cox & Perkins filed an interpleader action to determine the
appropriate payee of oil and gas proceeds derived from land under title
disputes.  2000 WL 977372, at *1.  The interpleader court awarded summary
judgment against Hearn and Lara Energy, and on appeal—among other things—the
appellants complained that the trial court erred by applying collateral
estoppel to the question of who was entitled to the interpleaded funds while
the underlying suit was still on appeal.  Id.  The court also concluded
that when the interpleader appellants had not been ordered to transfer money or
property to anyone, had not been enjoined either temporarily or permanently,
and had not been ordered to take any action by the interpleader court, and
their claims to the interpleaded proceeds were no greater than their claims in
the underlying lawsuit, they were not judgment debtors and therefore had no absolute
right to suspend the judgment.  Id. at *5.





[15]In
her third issue, Bradshaw asserts that we should not only reverse the trial
court’s judgment here but also order the Interpleader Appellees to return all
of the disputed royalty proceeds.  However, based on our disposition of
Bradshaw’s first two issues in this case, we need not reach her third issue.  See
Tex. R. App. P. 47.1.