

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00169-CV

| | | |
|---|---|---|
| Betty Lou Bradshaw | § | From the 355th District Court |
| v. | | |
| R.J. Sikes, Roger Sikes, Kathy Sikes, Greg Louvier, Pam Louvier, Christy Rome, Dacota Investment Holdings, L.L.P., a/k/a Dacota Investment Holdings, L.P., Colorado State Bank & Trust as Custodian of the R.J. Sikes IRA Account, R. Crist Vial, IRA Plus Southwest, LLC as Custodian of the R. Crist Vial Roth IRA Account, and Range Texas Production, L.L.C. | § | of Hood County (C2010739) |
| | § | March 14, 2013 |
| | § | Opinion by Justice McCoy |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

It is further ordered that appellant Betty Lou Bradshaw shall pay all costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS

By_____
  Justice Bob McCoy


### NO. 02-11-00169-CV

BETTY LOU BRADSHAW                                                    APPELLANT

V.

R.J. SIKES, ROGER SIKES, KATHY                                       APPELLEES
SIKES, GREG LOUVIER, PAM
LOUVIER, CHRISTY ROME,
DACOTA INVESTMENT HOLDINGS,
L.L.P. A/K/A DACOTA INVESTMENT
HOLDINGS, L.P., COLORADO
STATE BANK & TRUST AS
CUSTODIAN OF THE R.J. SIKES IRA
ACCOUNT, R. CRIST VIAL, IRA
PLUS SOUTHWEST, LLC AS
CUSTODIAN OF THE R. CRIST VIAL
ROTH IRA ACCOUNT, AND RANGE
TEXAS PRODUCTION, L.L.C.

------------

## FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

# MEMORANDUM OPINION[1]

------------

---

[1]*See* Tex. R. App. P. 47.4.

# I. Introduction

In three issues in this interpleader-based appeal, Appellant Betty Lou Bradshaw appeals the trial court's orders granting summary judgment for, and distributing the interpleaded proceeds to, Appellees R.J. Sikes, Roger Sikes, Kathy Sikes, Greg Louvier, Pam Louvier, Christy Rome, Dacota Investment Holdings, L.L.P. a/k/a Dacota Investment Holdings, L.P., Colorado State Bank & Trust as custodian of the R.J. Sikes IRA account, R. Crist Vial, IRA Plus Southwest, LLC, as custodian of the R. Crist Vial Roth IRA account, and Range Texas Production, L.L.C., (collectively, the Interpleader Appellees), after denying her motion to dismiss for lack of jurisdiction and to abate pending the resolution of her appeal in cause number 02-10-00369-CV.  We affirm.

## II. Factual and Procedural Background

### A. Prior Appeals

The background of this litigation is set out in *Range Resources Corp. v. Bradshaw (Bradshaw I)*, 266 S.W.3d 490, 491–92 (Tex. App.—Fort Worth 2008, pet. denied) (op. on reh'g), and *Bradshaw v. Steadfast Financial, L.L.C. (Bradshaw II)*, No. 02-10-00369-CV, 2013 WL 530969, at *1–2 (Tex. App.—Fort Worth Feb. 14, 2013, no pet. h.).

In short, after acquiring the executive right over property in which Bradshaw owned a nonparticipating royalty interest (NPRI), Steadfast Financial L.L.C. leased

4

the property to Range Production I, L.P.[2] for a 1/8 royalty. *Bradshaw I*, 266 S.W.3d at 491–92. Bradshaw sued, alleging that Steadfast had conspired with Range for a 1/8 royalty in the lease and an excessive leasing bonus instead of a 1/4 royalty in the lease, thereby breaching its fiduciary duty to her. *Id.* Bradshaw sued Steadfast, Range, and several of the Interpleader Appellees—who we referred to as the Royalty Holders in *Bradshaw II*[3]—among others, seeking the difference between the royalty she actually received and the royalty she would have received had no alleged breach occurred. *Id.*; *see also Bradshaw II*, 2013 WL 530969, at *2, 26.

Steadfast and some of the Royalty Holders filed a counterclaim at the outset of Bradshaw's lawsuit, asking for a declaratory judgment to define Bradshaw's NPRI under the applicable deeds as a "fractional royalty" and to construe the terms of the lease to find that Steadfast did not owe, and had not breached, a duty to Bradshaw. They also asked the trial court to declare that oil and gas production from the property "be distributed by the oil and gas lessee to each such party in accordance with the interest conveyed to them by Steadfast Financial LLC."

The parties filed competing motions for summary judgment on how to define Bradshaw's NPRI. *Bradshaw I*, 266 S.W.3d at 491–92. The trial court concluded

---

[2]Range Texas Production, L.L.C. (Range) is the successor of Range Production I, L.P.

[3]That is, R.J. Sikes, R. Crist Vial, Roger and Kathy Sikes, Greg and Pam Louvier, Christy Rome, and Dacota Investment Holdings, L.L.P. a/k/a Dacota Investment Holdings, L.P. *Bradshaw II*, 2013 WL 530969, at *1.

that her NPRI was a "fraction of royalty," and, in an agreed interlocutory appeal from the trial court's order, we affirmed this conclusion in *Bradshaw I*. *Id.*

Upon remand, Bradshaw sought to set aside Steadfast's transfers of NPRIs to the Royalty Holders, claiming that the transfers were fraudulent and seeking a constructive trust. *Bradshaw II*, 2013 WL 530969, at *2. Steadfast and the Royalty Holders, among others,[4] then moved for summary judgment on whether Steadfast owed Bradshaw a duty.[5] *Id.* The trial court found that Steadfast did not owe Bradshaw a duty, and its final summary judgment ordered that Bradshaw take nothing on her causes of action against all of the defendants, ordered her to pay costs, and stated, "This judgment finally disposes of all claims and parties and is final and appealable. All relief not expressly granted is DENIED." Bradshaw's appeal in cause number 02-10-00369-CV followed, and she superseded the judgment for costs by posting a $413 cash bond.

---

[4]The trial court granted Bradshaw's motion to consolidate the two interpleader actions brought by Range, which involved all of the Interpleader Appellees here, as well as Peter G. Bennis, Cleburne Bible Church, and Gary Humphreys. After the trial court ruled on the Interpleader Appellees' motion for summary judgment, it granted their motion for severance from Bennis and the others. The trial court's interpleader ruling in that case is now pending in this court in cause number 02-12-00262-CV.

[5]Steadfast moved for summary judgment on the basis of duty and estoppel by deed. *Bradshaw II*, 2013 WL 530969, at *3. The Royalty Holders relied on Steadfast's motion and also moved for summary judgment on Bradshaw's fraudulent transfer claims, opposing the imposition of a constructive trust on the proceeds of their royalty interests. *Id.* at *1, 23.

While Bradshaw's appeal was pending in cause number 02-10-00369-CV, the interpleader events at issue described below took place, ultimately resolved by the trial court with a summary judgment for the Interpleader Appellees and distribution of the interpleaded proceeds to them. On February 14, 2013, we reversed in part the trial court's summary judgment in cause number 02-10-00369-CV, after concluding that Steadfast owed Bradshaw a duty, and we remanded the case to the trial court for further proceedings. *Id.* at *20, 26.

## B. Interpleader Proceedings

Range filed its original petition in interpleader after the Interpleader Appellees demanded that it distribute their royalty proceeds to them after the trial court's summary judgment in the underlying case. The Interpleader Appellees then filed a cross claim, arguing that they were the rightful owners of the funds based on the fractional royalty interests that Steadfast had conveyed to them and based on the trial court's summary judgment denying Bradshaw's constructive trust and fraudulent transfer claims against them. They asked the trial court to grant Range's interpleader request, to enter judgment declaring their entitlement to the funds, and to award those funds and any future payments attributable to their royalty interests to them.

Bradshaw filed a denial to the Interpleader Appellees' cross claim, raising the affirmative defenses of res judicata, collateral estoppel, and issue preclusion, as well as complaining that the trial court lacked jurisdiction. She filed a motion to dismiss for want of jurisdiction and alternatively sought to have the interpleader action

7

abated during the pendency of her appeal in cause number 02-10-00369-CV. She did not file a specific cross claim asserting that she was entitled to the funds at issue.[6]

The trial court signed the order authorizing interpleader,[7] and the Interpleader Appellees filed a motion for summary judgment to "vindicate[ ] their ownership of the interplead funds and determin[e] that any adverse claim by Betty Lou Bradshaw is barred by [the] res judicata, collateral estoppel and claim preclusion effect of the take[-]nothing judgment." Bradshaw responded to their summary judgment motion but did not file her own separate motion for summary judgment.

In the March 16, 2011 order granting summary judgment for the Interpleader Appellees, the trial court ordered the release of over $3 million in royalty proceeds and provided for the distribution of any future royalty proceeds to the Interpleader Appellees. The trial court refused to allow Bradshaw to supersede that judgment.[8]

### III. Interpleader

---

[6]In her reply to the Interpleader Appellees' response to her motion to dismiss for want of jurisdiction, Bradshaw stated that her action in the previous case was "aimed at the damages from the breach of fiduciary duty [by Steadfast] as embodied in the suspended payments rather than seeking royalty that will never be Bradshaw's because it is Steadfast Financial's one-half (1/2)."

[7]The trial court also signed orders denying Bradshaw's motion to dismiss for lack of jurisdiction and her motion to abate.

[8]The Texas Supreme Court denied Bradshaw's June 22, 2011 petition for writ of mandamus in this case on July 15, 2011. *See In re Bradshaw*, No. 11-0468, *available at* http://www.supreme.courts.state.tx.us/historical/2011/jul/071511.htm (last visited Mar. 6, 2013).

Bradshaw argues that the trial court erred by denying her motion to dismiss the interpleader action for lack of jurisdiction, as well as by dismissing her motion to abate and by adjudicating the Interpleader Appellees' claimed entitlement to the disputed royalty proceeds.  The Interpleader Appellees respond that Bradshaw lacks standing for this appeal because she failed to assert her own claim to the funds interpleaded into the trial court's registry and that their claim is not barred by res judicata.

## A.  Jurisdiction

### 1.  Standing

We will address the Interpleader Appellees' allegation with regard to Bradshaw's standing for this appeal first.  *See Town of Flower Mound v. Rembert Enters., Inc.*, 369 S.W.3d 465, 470 (Tex. App.—Fort Worth 2012, pet. denied) (op. on reh'g) (stating that we review questions of subject matter jurisdiction de novo); *see also Brown v. Todd*, 53 S.W.3d 297, 305 n.3 (Tex. 2001) (noting that "standing is a component of subject matter jurisdiction").

While the Interpleader Appellees are correct in their assertion that Bradshaw did not file a specific document entitled "Cross claim," the substance of Bradshaw's various filings in this interpleader case—rather than their titles—indicate that she asserted a claim to the interpleaded funds*.  See, e.g.,* 51 Tex. Jur. 3d *Motion Procedure* § 3 (2008) ("The character of a motion is determined by its substance, not from its title, caption, or form.  The substance of a motion is determined by its body and prayer for relief.") (footnotes omitted).  Further, in their response to

9

Bradshaw's motion to dismiss, the Interpleader Appellees acknowledged that Bradshaw had laid claim to the funds at issue. *See, e.g., Olmstead v. Napoli*, 383 S.W.3d 650, 651 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (noting that the trial court determined that the interpleader defendants' trial briefs were in substance cross-motions for traditional summary judgment and treated them as such). And during the February 3, 2011 hearing on Range's interpleader petition and Bradshaw's motion to dismiss, when counsel for some of the Interpleader Appellees asked whether Bradshaw was "asserting in open court a claim to the funds that are sought to be interpled today," Bradshaw's counsel replied, "Your Honor, we've only been doing that since 2007, the date that we filed our original petition, *and we continue to do that, and we say that those are Ms. Bradshaw's funds, not the other side's funds*." [Emphasis added.] Therefore, we believe that Bradshaw sufficiently raised her claim to the interpleaded funds to have standing for this appeal.

## 2. Counterclaim

In part of her first issue, Bradshaw asserts that the trial court lacked jurisdiction to dispose of the merits of the interpleader action because it had previously denied the Interpleader Appellees' counterclaim to the disputed royalty proceeds in the underlying lawsuit. Specifically, she argues that when the trial court denied "all relief not expressly granted" in the final summary judgment in that case, it denied the Interpleader Appellees' counterclaim and that when they did not appeal this ruling, they could not resurrect this counterclaim as a cross claim in Range's interpleader action.

In support of this argument, Bradshaw relies on *In re Daredia*, 317 S.W.3d 247 (Tex. 2010) (orig. proceeding). In *Daredia*, a credit card company sued both Daredia and Map Wireless, Inc. to recover money due on three credit card accounts. *Id*. at 248. Daredia answered, but Map Wireless did not, and the credit card company moved for a default judgment against Map Wireless. *Id*. The credit card company's proposed order included the following Mother Hubbard clause, "All relief not expressly granted herein is denied. This judgment disposes of all parties and all claims in this cause of action and is therefore FINAL," and the trial court signed it. *Id*. No one appealed from the judgment. *Id*.

Fifteen months later, the credit card company moved for a judgment nunc pro tunc so that it could proceed against Daredia, the trial court granted the motion, and we denied Daredia's petition for writ of mandamus, concluding that the default judgment order was ambiguous and interlocutory because it had failed to address

11

the company's claims against Daredia, allowing the trial court to retain jurisdiction over the case. *Id.* The supreme court disagreed, holding that the default judgment's language was clear enough to conclude that it was final, and it granted Daredia's petition for writ of mandamus. *Id.* at 249–50.

While the language in the final summary judgment order appealed in cause number 02-10-00369-CV makes clear that the trial court intended its order to be final, *Daredia* is inapposite here. First, Range—not the Interpleader Appellees—filed the interpleader action in the trial court. In its petition, Range asked the court to determine to whom it had to pay the royalty proceeds it had held in suspense during the pendency of the underlying case in the trial court, and the trial court had jurisdiction to consider Range's request, as Range had no ownership interest in those proceeds.[9] *See* Tex. Natural Res. Code Ann. § 91.402(b) (West 2011) (stating that payments may be withheld when there is a dispute concerning title that would affect distribution of payments); *see also* Tex. R. Civ. P. 43; *Madeksho v. Abraham, Watkins, Nichols & Friend*, 112 S.W.3d 679, 686 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (noting that a post-judgment interpleader is a new filing and stating that the trial court had to have jurisdiction to determine ownership of funds tendered into its registry because it "cannot simply toss the money back out the clerk's window"); *Bryant v. United Shortline Inc. Assur. Servs., N.A.*, 984 S.W.2d

---

[9]Further, we need not address Bradshaw's argument in part of her first issue that the trial court's judgment here interfered with our jurisdiction over the appeal in *Bradshaw II*, as we have already disposed of that appeal.

12

292, 296 (Tex. App.—Fort Worth 1998, no pet.) (noting that the standard of review of a trial court's decision to grant a party's right to interpleader is an abuse of discretion and that any reasonable doubt about a stakeholder's right to interpleader must be resolved in the stakeholder's favor).

Further, Bradshaw's counterclaim argument misinterprets the result of the trial court's final, take-nothing judgment when viewed within the case's context: At the time that Bradshaw filed her original petition in *Bradshaw I*, Steadfast had already assigned to the pertinent Interpleader Appellees—i.e., the Royalty Holders—their fractional shares of Steadfast's royalty interest. 266 S.W.3d at 492. The trial court then subsequently addressed via summary judgment the two grounds in the counterclaim that affected those interests—defining whether Bradshaw's NPRI was a "fraction of royalty" or a "fractional royalty," and defining Steadfast's duty to Bradshaw as holder of the executive right. *Id.* at 492, 497–98. It also incorporated into the final summary judgment its earlier granting of the motions for summary judgment brought by the Royalty Holders, who sought summary judgment on Bradshaw's fraudulent transfer claims and sought to avoid the imposition of a constructive trust on the proceeds of the NPRIs they had received from Steadfast.[10]

*See Bradshaw II*, 2013 WL 530969, at *3, 20, 26. When the trial court granted the

---

[10]In its order granting the Royalty Holders' second motion for summary judgment, the trial court expressly stated that Bradshaw should take nothing on her claims against the Royalty Holders "for imposition of a constructive trust *on such parties' fractional royalty interests or the proceeds attributable to production arising from their ownership of a fractional royalty interest* in or to the approximately 1,774 acres the subject of this suit." [Emphasis added.]

13

final take-nothing judgment against Bradshaw, incorporating its previous summary judgments for the Royalty Holders, it essentially put the parties back into their original positions at the litigation's outset, which was all that the final portion of the counterclaim sought to achieve.[11]

And although in the final part of her first issue, Bradshaw contends that when she superseded the judgment for costs in her appeal of the take-nothing judgment in cause number 02-10-00369-CV, this should have prevented the trial court from enforcing its earlier judgment, the Interpleader Appellees are correct by pointing out that this ignores the nature of the interpleader action here and of the take-nothing judgment itself in the underlying case.[12] *See* Tex. R. App. P. 24.1(a) (setting out the

---

[11]Indeed, in her response to the Royalty Holders' motions for summary judgment in the underlying case, Bradshaw acknowledged that she would not have a fraudulent transfer claim against them if Steadfast had committed no breach of duty owed to her. *See Bradshaw II*, 2013 WL 530969, at *24.

[12]There was nothing, other than the judgment for costs, for Bradshaw to supersede, as the trial court's take-nothing judgment against her left her and the opposing parties in the same position they had been in prior to her lawsuit. *See* Tex. R. App. P. 24.2(a) (describing the types of judgment that can be superseded—other than conservatorship or cases involving a governmental entity—as judgments for recovery of money, real property, and "other"; all three of these require that there be a judgment *debtor*); *In re marriage of Richards*, 991 S.W.2d 30, 31–32 (Tex. App.—Amarillo 1998, no pet.) (noting, in divorce appeal, that when a judgment does not provide for the recovery of money or property in the possession of the other party, there is nothing for the appellee to execute nor any need of the appellant to supersede an attempt by the appellee to execute on the decree); *see also* Robert B. Gilbreath and Curtis L. Cukjati, *Superseding the "Other Judgment,"* 12 App. Advoc. 11, 11–13 (1998) (discussing how to handle supersedeas situations in which judgments for something other than money or property occur; a take-nothing judgment is not listed in the summary of case law describing "other judgments" that can be superseded). Here, because costs were the only item awarded in the otherwise take-nothing judgment, there was no other enforcement item to suspend.

methods by which a judgment debtor may supersede a judgment to suspend its enforcement against her), 24.2(a)(1) (noting that for the recovery of money, such as costs awarded in the judgment, the amount of the bond, deposit, or security must equal the sum of the award); *cf.* Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West 2008) (providing that a judgment *creditor* is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction of judgment), § 63.001(3) (West 2008) (stating that a writ of garnishment is available if the plaintiff has a valid, subsisting judgment, among other requirements); *Madesksho*, 112 S.W.3d at 701 n.16 (citing other means by which judgment *creditors* may reach a debtor's assets). We overrule Bradshaw's first issue.

## B. Summary Judgment

In her second issue, Bradshaw states that even if the trial court had the jurisdiction to adjudicate the interpleader action's merits, it nonetheless erred by granting summary judgment for the Interpleader Appellees and ordering the distribution of the interpleaded royalty proceeds to them when their claim to the disputed royalty proceeds was barred by res judicata and they did not establish their entitlement to summary judgment as a matter of law. Because Bradshaw premises her res judicata argument on the same counterclaim argument that we have already addressed above, we overrule this portion of her second issue.

---

In other words, "Nothing comes from nothing. Nothing ever could." Richard Rogers and Oscar Hammerstein II, *Something Good*, *on* The Sound of Music (1959).

Bradshaw also argues that none of the grounds presented by the Interpleader Appellees can support the trial court's judgment.

In their motion for summary judgment, the Interpleader Appellees argued that the final summary judgment in the underlying case conclusively established as a matter of law that they were entitled to the respective funds being held in the trial court's registry, as well as future funds payable as royalties attributable to their respective fractional NPRIs, and that any adverse claims by Bradshaw were barred by the summary judgment in the underlying case. To their motion, they attached copies of the royalty deeds pertaining to the respective NPRIs, as well as copies of the documents filed in the underlying case: Bradshaw's second amended petition, the various motions for summary judgment, the trial court's interim summary judgment orders and final judgment, and Bradshaw's second amended and restated lis pendens filed after she appealed the final summary judgment.

"[A] judgment is final for the purposes of issue and claim preclusion 'despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo.'" *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) (op. on reh'g); *see also Street v. Honorable Second Court of Appeals*, 756 S.W.2d 299, 301 (Tex. 1988) (orig. proceeding) (stating that a judgment that is not superseded can be executed upon regardless of its appellate status);[13] *Am. Gen. Fire & Cas. Co. v.*

---

[13]As discussed above, other than the judgment for costs in the underlying suit, which Bradshaw superseded, there was nothing for her to supersede from the take-nothing judgment.

*Schattman*, 761 S.W.2d 582, 587 (Tex. App.—Fort Worth 1988, no writ) (noting that in *Scurlock*, the supreme court held that judicial policy required that judgments become final for res judicata, collateral estoppel, and issue preclusion purposes once the trial court loses plenary power, regardless of whether the judgment is appealed). In *Hearn*, on facts that are very similar to the instant case, the Fourteenth Court of Appeals relied on *Scurlock* to conclude that the trial court did not err by applying collateral estoppel to an interpleader action while the underlying suit was still pending on appeal. *See Hearn v. Cox & Perkins Exploration, Inc.*, No. 14-98-01275, 2000 WL 977372, at *4–5 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (not designated for publication).[14] Based on the record before us, we reach the same conclusion, hold that summary judgment for the Interpleader Appellees was appropriate, and overrule the remainder of Bradshaw's second issue.[15]

---

[14]In *Hearn*, Cox & Perkins filed an interpleader action to determine the appropriate payee of oil and gas proceeds derived from land under title disputes. 2000 WL 977372, at *1. The interpleader court awarded summary judgment against Hearn and Lara Energy, and on appeal—among other things—the appellants complained that the trial court erred by applying collateral estoppel to the question of who was entitled to the interpleaded funds while the underlying suit was still on appeal. *Id*. The court also concluded that when the interpleader appellants had not been ordered to transfer money or property to anyone, had not been enjoined either temporarily or permanently, and had not been ordered to take any action by the interpleader court, and their claims to the interpleaded proceeds were no greater than their claims in the underlying lawsuit, they were not judgment debtors and therefore had no absolute right to suspend the judgment. *Id*. at *5.

[15]In her third issue, Bradshaw asserts that we should not only reverse the trial court's judgment here but also order the Interpleader Appellees to return all of the disputed royalty proceeds. However, based on our disposition of Bradshaw's first two issues in this case, we need not reach her third issue. *See* Tex. R. App. P. 47.1.

## IV. Conclusion

Having overruled Bradshaw's dispositive issues, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DELIVERED:  March 14, 2013