NO. 07-10-00434-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 17, 2012

CHARLES CALVIN MOORE, ET AL, APPELLANTS

v.

NOBLE ENERGY, INC., ET AL, DAISY MOORE AS
INDEPENDENT EXECUTRIX OF THE ESTATE OF LEO H.
MOORE, MELISSA MARIE WILLIAMS AND MICHELLE
LEIGH WILLIAM DICKEY, APPELLEES

FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;

NO. 12,425; HONORABLE LEE WATERS, JUDGE

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

This case requires our construction of a royalty interest reserved in a 1955 deed conveying land in Wheeler County. The trial court granted summary judgment for appellees Noble Energy, Inc., *et al*. Appellants Charles Calvin Moore, *et al.*, appeal. We will affirm the trial court.

Background

By a warranty deed dated May 17, 1955, J. C. Moore conveyed 160 acres in Wheeler County, Texas, to the Veterans' Land Board of the State of Texas.[1] The deed contains a reservation reading, in its entirety, as follows:

> THERE IS RESERVED unto the Grantor herein, his heirs and assigns a one-half non-participating royalty interest (one-half of one-eighth of production). It being understood that the grantor herein, his heirs and assigns, shall not be required to join in any lease, bonus money or delay rentals, but shall only participate in production.

Appellants ("the Moores") are the successors of J. C. Moore. The individual appellees ("the Russells") aligned with Noble Energy, Inc. are the successors of the Veterans' Land Board. Noble Energy holds, as lessee, an oil and gas lease signed in 2003, providing for payment of a 3/16 royalty. Four gas wells were drilled and completed under the lease.

A dispute later arose over the division of the 3/16 royalty, and the Moores filed suit in 2010, seeking relief including a declaration that the 1955 deed reserved a non-

---

[1] At the time, the authority of the Veterans' Land Board to purchase land in Texas to be sold to Texas veterans was set out in sections 10 and 16 of article 5421m. *See* Tex. Rev. Civ. Stat. Ann. art. 5421m § 10, *repealed by* Act of May 24, 1977, 65th Leg., R.S., ch. 871, art. I, § 2(a)(1), 1977 Tex. Gen. Laws 2345, 2689, *now codified as* Tex. Nat. Res. Code Ann. § 161.172, .211 (West 2011); Tex Rev. Civ. Stat. Ann. art. 5421m § 16, *repealed by* Act of May 24, 1977, 65th Leg., R.S., ch. 871, art. I, § 2(a)(1), 1977 Tex. Gen. Laws 2345, 2689, *now codified as* Tex. Nat. Res. Code Ann. § 161.281-.288 (West 2011).

participating royalty of one-half the royalty contained in any future lease.[2] The Moores alleged the royalty reservation was ambiguous. Noble Energy and the Russells took the position the deed unambiguously reserved a fixed 1/16th non-participating royalty interest. In response to motions for summary judgment filed by Noble Energy and the Russells, the Moores asserted the reservation's ambiguity raised an issue of fact, precluding summary judgment. On appeal of the summary judgment granted by the trial court, the Moores again argue the reservation is ambiguous.

Standard of Review

We review *de novo* the trial court's grant of summary judgment. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). When conducting a *de novo* review, we exercise our own judgment and redetermine each issue according no deference to the trial court's decision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998); *Range Resources Corp., v. Bradshaw*, 266 S.W.3d 490, 493 (Tex.App--Fort Worth 2008, pet. denied). The movant for a traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

---

[2] The Moores' pleadings actually asked that the court determine the reserved royalty was "equal to one-half of the royalty fraction inserted in the then-existing and all future leases." The parties do not describe a lease existing at the time of the execution of the 1955 deed, and the undisputed statements that J. C. Moore owned one hundred percent of the surface and mineral estates at the time of his conveyance leave us to conclude the property was not then subject to a mineral lease.

3

Applicable Law

Whether an instrument is ambiguous is a question of law for the court to decide. *Friendswood Dev. Co. v. McDade & Co*., 926 S.W.2d 280, 282 (Tex. 1996) (per curiam). To determine whether an instrument is ambiguous, the court must examine the instrument as a whole in light of the circumstances present at the time of its execution. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd*., 940 S.W.2d 587, 589 (Tex. 1996); *Derwen Resources, LLC v. Carrizo Oil & Gas, Inc*., No. 09-07-00597-CV, 2009 Tex. App. Lexis 3661, at *9-10 (Tex.App.--Beaumont May 21, 2009, no pet.) (mem. op.); *Savage v. Doyle*, 153 S.W.3d 231, 234 (Tex.App.--Beaumont 2004, no pet.). If after applying the pertinent rules of construction**,** an instrument is subject to two or more reasonable interpretations, then it is ambiguous, and a fact issue exists as to the parties' intent. *Columbia Gas Transmission Corp*., 940 S.W.2d at 589; *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (Tex. 1951); *Derwen Resources*, 2009 Tex. App. Lexis 3661, at *11; *see Brown v. Havard,* 593 S.W.2d 939, 942 (Tex. 1980). However, an ambiguity does not arise merely because the parties advance conflicting interpretations of the instrument's language; instead, for an ambiguity to exist, both interpretations must be reasonable. *Columbia Gas Transmission Corp*., 940 S.W.2d at 589

Our primary objective in construing a deed is to determine the intent of the parties from the four corners of the deed**.** *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). "[W]e must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered

4

meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). No single provision taken alone will be given controlling effect; rather, all the deed provisions must be considered with reference to the whole instrument. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

Analysis

Mentioned in the record are three possible interpretations of the quantum of royalty reserved in the 1955 deed:

(a) a one-half non-participating royalty;

(b) a royalty of one-half that retained in any future lease; and

(c) a royalty of one-half of one-eighth, or one-sixteenth.

The trial court's order granting summary judgment states its finding the royalty reservation is not ambiguous. To reach that conclusion, the trial court necessarily found that the deed is reasonably read to reserve a fixed royalty of one-half of one-eighth of production, or one-sixteenth, and cannot reasonably be read to reserve a one-half royalty or a royalty of one-half that retained in a future lease. We agree with the trial court's implicit finding.

Our analysis will consider each possible interpretation in turn, seeking to ascertain whether the reservation is subject to more than one reasonable interpretation and thus is ambiguous.

We begin by noting that the reservation language employed in the 1955 deed is peculiar in that it does not identify expressly the substances as to which the reserved royalty applies. The primary sentence of the reservation language states the grantor reserves "a one-half non-participating royalty interest (one-half of one-eighth of production)." Missing is the typically-found language stating that the reserved royalty is of "oil, gas and other minerals." Despite this peculiarity in the wording of the reservation, neither the nature of the reserved interest nor its application to the natural gas being produced by Noble Energy is in dispute. The parties agree the Moores own a non-participating royalty interest[3] in the natural gas; only the quantum of the interest is disputed.

It is undisputed also that there was reserved in the deed only a single quantum of royalty, that is, the language "a one-half non-participating royalty interest (one-half of one-eighth of production)" was intended by the parties to the deed to express only one fraction. In that respect, the deed is to be contrasted with those in which its parties intentionally reserved or conveyed interests described by differing fractions. *See, e.g., Concord Oil Co. v. Pennzoil Expl. & Prod. Co.*, 966 S.W.2d 451, 457 (Tex. 1998) (owner of mineral interest may convey differing fractions of attributes of mineral estate).

The centerpiece of the Moores' argument is the contention that the deed reasonably can be construed to reserve a royalty of one-half the royalty retained by the lessor in a future lease. Noble Energy argues the language cannot reasonably be so

---

[3] *See Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995) (describing nature of non-participating royalty interest, citing *Arnold v. Ashbel Smith Land Co.*, 307 S.W.2d 818, 825 (Tex.Civ.App.--Houston 1957, writ ref'd n.r.e.)).

read.  We agree with Noble Energy, seeing nothing in the deed's language to suggest the parties intended such a reservation.

A grantor of land may reserve an interest consisting of a fraction of the royalty retained by the lessor under an existing mineral lease, or that retained under a lease made in the future.  Such an interest is commonly referred to as a "fraction of royalty." *See, e.g., Range Resources Corp.*, 266 S.W.3d at 493 (contrasting "fraction of royalty" with "fractional royalty").  Its owner is entitled to a share of mineral production equal to the stated fraction times the royalty retained in the lease.  *Id.* (noting share of production attributable to fraction of royalty is not fixed but "floats" with quantum of royalty contained in lease).  "The owner of 1/16 fraction *of* royalty takes 1/16 of whatever royalty the lessor reserves."  2 Patrick H. Martin & Bruce M. Kramer, Williams & Meyers Oil and Gas Law § 327.2 (LexisNexis Matthew Bender 2009) (italics in original; citation omitted).

The owner of a fractional royalty, by contrast, is entitled to the stated fraction of gross production, unaffected by the royalty reserved in the lease.  *Range Resources Corp.*, 266 S.W.3d at 493.  "Thus the owner of 1/16 royalty takes 1/16 of gross production whether the lease provides for a lessor's royalty of 1/16, 1/8 or 1/4." Williams and Meyers, § 327.2 (citation omitted).

The language of the 1955 reservation is typical of that creating a fractional royalty.  *See* Williams & Meyers, § 327.1 (listing, as examples of conveyancing language creating a fractional royalty, "a one-fourth royalty in all oil, gas and other

7

minerals in and under and hereafter produced,"[4] and "an undivided one-sixteenth royalty interest of any oil, gas or minerals that may hereafter be produced."[5]). The parenthetical language of the 1955 reservation also is indicative of a fractional royalty, spelling out the reserved interest as one-half of one-eighth *of production*.

By contrast, none of the language of the 1955 deed reservation is typical of a fraction-of-royalty reservation. *See* Williams & Meyers, § 327.2 (listing, among examples of language creating a fraction of royalty, "an undivided one-half interest in and to all of the royalty,"[6] and "one-half of one-eighth of the oil, gas and other mineral royalty that may be produced"[7]).

Comparison of the language in the 1955 deed and that addressed by the Texas Supreme Court in *Brown*, 593 S.W.2d 939, is instructive.[8] The reservation in *Brown*, contained in a 1963 warranty deed, read in pertinent part:

> Grantors reserve unto themselves, their heirs and assigns in perpetuity an
> undivided one-half non-participating royalty (Being equal to, not less than

---

[4] *Arnold,* 307 S.W.2d at 820.

[5] *Masterson v. Gulf Oil Co.,* 301 S.W.2d 486, 487 (Tex.Civ.App--Galveston 1957, writ ref'd n.r.e.).

[6] *State Nat'l Bank v. Morgan,* 135 Tex. 509, 143 S.W.2d 757 (1940). The treatise also cites the reservation language from *Schlittler v. Smith*, 128 Tex. 628, 101 S.W.2d 543 (1937) ("an undivided one-half interest in and to the royalty rights on all of the oil and gas and other minerals") as an example of a fraction of royalty. Williams & Meyers, § 327.2 n.4

[7] *Harriss v. Ritter,* 154 Tex. 474, 279 S.W.2d 845 (1955).

[8] The court also cited § 327 of Williams & Meyers in its analysis in *Brown*. 593 S.W.2d at 942.

8

an undivided 1/16th) of all the oil, gas and other minerals, in, to and under or that may be produced from said land.

*Id.* at 940.

Construing the language of the parenthetical phrase "Being equal to, not less than an undivided 1/16th," the court found it subject to more than one interpretation. One of the interpretations, the court said, would construe the language to "reserve ½ of the royalties contained in future leases, providing further that such share must not be less than 1/16." *Id*. at 942.[9]

Although we agree with the Moores that the 1955 deed anticipates future leasing of the land for mineral exploration,[10] the ambiguous "equal to, not less than" wording in the *Brown* reservation finds no counterpart in the 1955 deed. Although the court in *Brown* stated "[w]ithout the parenthesis, the reservation is either a ½ royalty or ½ of royalties," it concluded that, omitting the parenthetical phrase, the reservation language

---

[9] The dissenting justices in *Brown* would have found the deed unambiguously reserved a fraction of royalty. 593 S.W.2d at 945 (McGee, J., dissenting). The dissenting opinion also focused largely on the language of the reservation's parenthetical phrase, noting "[t]here is no language anywhere in the reservation clause to indicate that the Browns' royalty was to be limited to a maximum of 1/16 . . . ." Here, by contrast, there is clear language the Moores' royalty was intended to be limited to 1/16, the parenthetical language "one-half of one-eighth *of production*."

[10] *See Schlittler*, 101 S.W.2d at 544 (holding a reservation of royalty on minerals which may be produced "necessarily implies that the grantor contemplated the leasing of the land for production"); *Range Resources Corp*., 266 S.W.3d at 496 (discussing reservation language similarly indicating parties contemplated future leasing). *See also* section 22, article 5421m (authorizing Veterans' Land Board to execute oil, gas and mineral leases on land purchased by the Board). Tex. Rev. Civ. Stat. Ann. art. 5421m § 22, *repealed by* Act of May 24, 1977, 65th Leg., R.S., ch. 871, art. I, § 2(a)(1), 1977 Tex. Gen. Laws 2345, 2689, *now codified as* Tex. Nat. Res. Code Ann. § 161.072 (West 2011).

"would reserve ½ of all the oil, gas, and other minerals produced, and not ½ of any outstanding or future royalty." 593 S.W.2d at 942.[11] The court went on to say, "However, it is apparent that the parenthetical phrase has reference to a reservation *of* royalty." *Id.* (italics in original). The same cannot be said of the language the parties used in the 1955 deed we examine. Whether one emphasizes the "one-half non-participating royalty interest" wording, or the parenthetical language, all of the reservation language speaks straight-forwardly of a fractional royalty.

Discussing an example of deed language rendered ambiguous because of a reservation "cast in the form of fractional royalty and a fraction *of* royalty," Williams and Meyers point to the Texas case of *Nugent v. Freeman*.[12] Williams & Meyers, § 327.2 (italics in original). The deed reserved "an undivided one-half interest in and to the royalty rights (that is one-sixteenth) of all the oil, gas and other minerals that may be produced . . . ." It is clear why the treatise's authors considered the reservation contained language suggestive both of a fractional royalty and a fraction of royalty. The wording "undivided one-half interest in and to the royalty rights," is precisely the language other Texas cases have held created a fraction of royalty. *See, e.g., State Nat'l Bank*, 143 S.W.2d at 758; *Schlittler*, 101 S.W.2d at 544. As we have noted, no language indicative of a fraction of royalty appears in the deed under consideration

---

[11] *See Range Resources Corp.*, 266 S.W.3d at 494 (discussing *Brown*).

[12] 306 S.W.2d 167 (Tex.Civ.App.--Eastland 1957, writ ref'd n.r.e.). The treatise uses the language from *Nugent* only as an illustration of ambiguous language. The issue on appeal in *Nugent* did not involve the quantum of interest reserved under the deed's language. *Id.* at 169-70.

here.  The reservation is not cast in the form both of a fractional royalty and a fraction of royalty.

Because of the absence of any language indicating the parties intended a reservation of a fraction of royalty, we must conclude the reservation can reasonably be read only to reserve a fractional royalty.

The Moores did not assert the position before the trial court that the deed reasonably can be read to reserve a one-half fractional royalty.[13]  Much of their argument, however, focuses on what they see as contradiction between the one-half royalty stated in the reservation and the one-half of one-eighth of production also stated.

It is undisputed the deed's phrase "one-half non-participating royalty interest," standing alone, would reserve to the grantor a fifty percent interest in the production, free of production costs.  *See Plainsman Trading Co.*, 898 S.W.2d at 789 (non-

---

[13] The Moores' responses to the motions for summary judgment filed by Noble Energy and the Russells contended that the two reasonable interpretations of the deed were first, that it reserved one-half of the royalty provided under any future lease, and second, the reading urged by Noble Energy and the Russells, that the royalty was a fixed one-half of one-eighth, or one-sixteenth.  The Moores maintain this posture on appeal, arguing at one point in their brief, "Clearly, both parts of the royalty reservation on their face reserve a fractional royalty (50% and 6.25%).  However, since those fractional royalties are inconsistent and cannot be reconciled under the harmonization canon, the entire reservation has been rendered ambiguous, thereby leaving the trier of fact to determine if the royalty reservation is a fixed 1/16 fractional royalty or one-half of the fractional royalty in any existing or future lease."

participating royalty interest "merely entitles its owner to a share of the production proceeds, free of the expenses of exploration and production").[14]

Given that the parties contemplated future leasing of the land for mineral exploration, a construction of the deed to reserve a one-half royalty is of course doubtful. Leasing would be hindered by the necessity for the remaining half of the production proceeds to bear the costs of drilling, equipping and operating the well, together with the royalty reserved in the lease, and provide a profit to the lessee. *See generally Clifton v. Kuntz*, 160 Tex. 82, 325 S.W.2d 684, 695 (1959) (discussing reasonable expectation of profit for lessor and lessee under oil and gas lease).

Construction of the language to reserve a one-half royalty would also require that the parenthetical phrase be ignored, contrary to the rule of construction mandating that we examine the deed as a whole. *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589.

Comparison of the reservation in the 1955 deed with that addressed in *Brown*, 593 S.W.2d 939, is again instructive at this point. The court found that reservation ambiguous not simply because of the language of the parenthetical phrase the court found subject to more than one interpretation. The court also stated its agreement with the court of civil appeals "that an ambiguity arises from the inclusion of the parenthetical

---

[14] *See Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986) (recognizing "five essential attributes of a severed mineral estate: (1) the right to develop (the right of ingress and egress), (2) the right to lease (the executive right), (3) the right to receive bonus payments, (4) the right to receive delay rentals, (5) the right to receive royalty payments").

phrase (Being equal to, not less than an undivided 1/16[th]) in the reservation." The court further stated that ambiguity "is illustrated by the fact that the Browns claim and the trial court awarded them 1/2 of the minerals insofar as the Gill No. 1 well is concerned; yet construed the same reservation to entitle the Browns to ½ of the 3/8 royalty received from the four M-Tex wells." 593 S.W.2d at 942.[15]

As the Fort Worth court of appeals pointed out in *Range Resources Corp.*, 266 S.W.3d at 495, the property conveyed in *Brown* was under lease at the time the reservation was made. The Browns had signed a mineral lease in 1950, and one well, the Gill No. 1, had been drilled under that lease. The Browns conveyed the property in 1963, reserving the interest in dispute. In 1973, the Browns' successors leased the property, except for 80 acres surrounding the Gill No. 1, to M-Tex, Inc., which drilled four wells. 593 S.W.2d at 941.

To the extent that the existence of the Gill No. 1 well drilled under the 1950 lease, and the trial court's award to the Browns of one-half of the minerals produced from that well, contributed to the court's conclusion the reservation was ambiguous, *Brown* is to be distinguished from our present case. There is no evidence of any well producing from the 160 acres at the time of the 1955 deed. *See Columbia Gas Transmission Corp.*, 940 S.W.2d at 589 (ambiguity determined by examining deed in light of circumstances present at time of its execution).

---

[15] The dissenting justices in *Brown*, who as we have noted took the position the reservation language was unambiguous, pointed out the award of half the production from the Gill No. 1 was the result of a stipulation entered into by the parties at trial. 593 S.W.2d at 945 (McGee, J., dissenting).

While not contending that the deed reasonably can be read to reserve a royalty of one-half the production, the Moores' contention seems to be that the presence of the "one-half" language muddies the interpretive water sufficiently to cause ambiguity. But the test we must apply asks whether the language is susceptible to two or more *reasonable* interpretations. *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589; *Universal C.I.T. Credit Corp.,* 243 S.W.2d at 157.

The Moores contend the trial court effectively has ruled that in situations such as this a parenthetical phrase will always be found to control over a preceding unambiguous statement of reservation. We discern no such holding in the trial court's ruling. In our view, the case involves simply the application of settled law regarding the ambiguity of instruments to the language used in the deed, under the undisputed circumstances existing at the deed's execution. Unlike that in *Brown*, the reservation language in this deed is not susceptible to two or more reasonable interpretations, so the deed is not ambiguous. That the parties could have used clearer language to express their intent does not create an ambiguity when only one reasonable interpretation exists. *Columbia Gas Transmission Corp.,* 940 S.W.2d at 591.

As noted, the Moores have never denied the reservation reasonably can be read to reserve a royalty of one-half of one-eighth of production, or one-sixteenth. Of the three possible interpretations of the language the parties used, it is the only interpretation we find reasonable. By that reading, the parenthetical phrase explains and defines the "one-half non-participating royalty interest" as equal to one-half of one-eighth of production. *See Range Resources Corp.,* 266 S.W.3d at 496 (in similar

14

reservation, finding parenthetical "interpreted" preceding language); *Miller v. Sandvick*, 921 S.W.2d 517, 522 (Tex.App.--Amarillo 1996, writ denied) (describing use of parenthetical "by way of comment, explanation or translation"); *Helms v. Guthrie,* 573 S.W.2d 855 (Tex.App.--Ft. Worth 1978, writ ref'd n.r.e.). Finding no error in the trial court's ruling that the royalty reservation is unambiguous and is equal to a fixed 1/16[th] non-participating royalty interest, we overrule appellants' contention and affirm the trial court's judgment.

James T. Campbell
Justice

Pirtle, J., dissenting without written opinion.