

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00539-CV

Bretton Guy **DAWKINS**, Bradley Ken Dawkins, Jerry Howard Oxford and Sharon Ann Oxford,
Appellants

v.

Madelon **HYSAW**, Kathryn Hysaw Weaver, Michael and Cindy Burris Family Partnership III,
Ltd., Byron M. Burris, and Judith Ann Burris Dziuk,
Appellees

From the 81st Judicial District Court, Karnes County, Texas
Trial Court No. 12-05-00107-CVK
Honorable Donna S. Rayes, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:          Marialyn Barnard, Justice
                  Rebeca C. Martinez, Justice
                  Patricia O. Alvarez, Justice

Delivered and Filed:  July 30, 2014

REVERSED AND RENDERED

This case involves the construction of a will executed in 1947 by Ethel Nichols Hysaw.

Ethel devised to each of her three children (i.e., Inez, Howard, and Dorothy) specific parcels of

land in fee simple, subject to a royalty interest for all the lands to be shared by each child.  After a

dispute arose over the amount of royalty each was entitled to receive, some of Ethel's descendants

petitioned the court to construe Ethel's will.  Inez's descendants contended the will granted Ethel's

children a fractional royalty; Howard's and Dorothy's descendants argue the will requires Ethel's

children to share all royalties equally. The trial court rejected Inez's descendants' reasoning, and Inez's descendants appeal.

We conclude Ethel's will clearly and unambiguously devised all her rights in the surface and mineral estates to the specified surface estate devisee subject to a fractional royalty—a fixed fraction of 1/24 of production—to each of the other two siblings. Therefore, we reverse the trial court's judgment and render judgment as described below.

## BACKGROUND

To begin, we describe the will, identify the specific parties, and outline the lawsuit.

### A. Ethel's Will

Ethel Nichols Hysaw had three children, Inez Hysaw Foote, Howard Caldwell Hysaw Jr., and Dorothy Frances Hysaw Burris. In 1947, Ethel executed her last will and testament. At the time, she owned three tracts of land in Karnes County: a tract of 1,065 acres, a tract of 200 acres, and a tract of 150 acres. She devised fee simple title to each of her children as follows: to Inez, 600 acres out of the 1,065 acre tract; to Dorothy, 465 acres out of the 1,065 acre tract; and to Howard, the 200 and 150 acre tracts.[1] In a separate paragraph, Ethel reiterated that the executive, bonus, and delay rental rights belonged to the child to whom she devised the surface estate, and subjected the devised mineral estates to the royalty interests in all the tracts to be shared by Inez, Howard, and Dorothy.

### B. The Parties

When this suit began, each of Ethel's children had already passed away. The parties in this case are either direct descendants of, or devisees of, Ethel's three children.

---

[1] The parties stipulated to the following facts. Before she executed her will, Ethel executed six deeds dated October 5, 1946, whereby she conveyed to each child (i.e., Inez, Howard, and Dorothy) certain royalty interests in the minerals in the 200 and 150 acre tracts. Approximately one year before her death, but after her will was executed, Ethel conveyed the surface estate of the 200 acre tract to Howard. Therefore, none of those interests passed under the will.

Plaintiffs Madelon Hysaw and Kathryn Hysaw Weafer are devisees under Howard's will; Madelon is Howard's widow, and Kathryn is Howard's daughter. Madelon and Kathryn own whatever royalty interests were devised to Howard by Ethel's will.

Defendants Bretton Guy Dawkins, Bradley Ken Dawkins, Jerry Howard Oxford, and Sharon Ann Oxford are descendants of Ethel's daughter Inez. They own whatever royalty interests were devised to Inez by Ethel's will.

Intervenors Michael and Cindy Burris Family Partnership III, Ltd., Byron M. Burris, and Judith Ann Burris Dziuk now own whatever royalty interests were devised to Dorothy Francis Hysaw Burris by Ethel's will.

For simplicity, we refer to the parties (whether descendants or other successors) as descendants of the person from whom they obtained their interest, i.e., Inez, Howard, or Dorothy. We also use Appellants to refer to Inez's descendants, and Appellees to refer to Howard's and Dorothy's descendants.

## C.    The Lawsuit

Ethel's will conveyed specific surface estates in "fee simple title" to her children subject to "an undivided one-third (1/3) of an undivided one-eighth (1/8) of all oil, gas or other minerals in or under or that may be produced from any [of the 1,065, 150, or 200 acre tracts.]" In 2008, Appellants executed a lease that provided for a royalty of one-fifth of the oil and gas produced on the 600 acres Ethel devised to Inez, and that lease has resulted in production. Thereafter, Dorothy's descendants also executed a lease for her 465 acres that provides for a royalty in excess of one-eighth. Because the lessors' royalties exceed 1/8 of production, and Inez's descendants proposed a will construction that yields unequal sharing of royalties, Howard's descendants sought a declaratory judgment to determine the royalty interest each of Ethel's children was entitled to receive. Dorothy's descendants intervened and supported Howard's descendants' view.

Appellants argue the will devises to Howard's and Dorothy's descendants a fractional royalty—a fixed fraction of production—from leases on Appellants' land, and Appellants are entitled to the rest of the royalty.

Appellees contend the will devises to each of Ethel's children a one-third fraction of royalty—one-third of any and all royalty interest obtained from all the tracts.

The parties filed competing traditional motions for summary judgment. The trial court denied Inez's descendants' motion and granted Howard's and Dorothy's descendants' motion. Inez's descendants appeal the trial court's judgment.

### STANDARD OF REVIEW

To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). When presented with stipulated facts, we review de novo the questions of law to determine whether the trial court properly determined that the movant was entitled to judgment. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548; *Coleman v. Coleman*, 350 S.W.3d 201, 202–03 (Tex. App.—San Antonio 2011, no pet.). "When both sides move for summary judgment and the trial court grants one motion and denies the other, [we] review both sides' summary judgment evidence[,] . . . determine all questions presented[,] . . . [and] render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) (citations omitted); *accord Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Coleman*, 350 S.W.3d at 202.

"Construction of an unambiguous will is a matter of law, which we review de novo." *Coleman*, 350 S.W.3d at 203; *see Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991) (addressing an oil and gas royalty deed construction).

## WILL CONSTRUCTION

### A.    Testator's Intent

Our foremost inquiry in construing a testator's will is to determine the testator's intent. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000); *Coleman*, 350 S.W.3d at 203; *Luckel*, 819 S.W.2d at 461; *cf. Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (addressing contract construction).  We ascertain the testator's intent by searching within the four corners of the will.  *Lang*, 35 S.W.3d at 639; *Luckel*, 819 S.W.2d at 461.  We "focus not on 'what the testatrix intended to write, but the meaning of the words she actually used.'"  *Lang*, 35 S.W.3d at 639 (quoting *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980)). "If the will is unambiguous, [we will] not go beyond specific terms in search of the testatrix's intent."  *Lang*, 35 S.W.3d at 639; *accord Coleman*, 350 S.W.3d at 203.  "As [the Texas Supreme Court has] said on numerous occasions, 'The intent must be drawn from the will, not the will from the intent.'"  *Lang*, 35 S.W.3d at 640 (quoting *Lehman v. Corpus Christi Nat'l Bank*, 668 S.W.2d 687, 688 (Tex. 1984)).

### B.    Ambiguity

Determining "[w]hether a will is ambiguous is a question of law for the court."  *Steger v. Muenster Drilling Co.*, 134 S.W.3d 359, 373 (Tex. App.—Fort Worth 2003, pet. denied); *see Coker*, 650 S.W.2d at 394 (contract construction).  Although parties may propose conflicting interpretations of a will, "[i]f the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and [we] will construe the [will] as a matter of law."  *Coker*, 650 S.W.2d at 393 (contract construction); *accord Luckel*, 819 S.W.2d at 461; *Steger*, 134 S.W.3d at 373.

**C.    Construction**

In construing a will, we examine the plain language of the entire will. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) (contract construction); *accord Luckel*, 819 S.W.2d at 462; *Coleman*, 350 S.W.3d at 203. Where provisions are susceptible to more than one construction, we seek "to harmonize and give effect to all the [will's] provisions." *See Valence Operating Co.*, 164 S.W.3d at 662; *accord Luckel*, 819 S.W.2d at 462; *Coleman*, 350 S.W.3d at 203. However, we are not free to alter the unambiguous language of a will's provision "'under the guise of construction of the language of the will' to reach a *presumed* intent." *Lang*, 35 S.W.3d at 639 (quoting *Stahl*, 610 S.W.2d at 151) (emphasis added); *accord Parker v. Parker*, 131 S.W.3d 524, 532 (Tex. App.—Fort Worth 2004, pet. denied); *see Luckel*, 819 S.W.2d at 463; *Coleman*, 350 S.W.3d at 203.

**ANALYSIS**

The central question here is what royalty interests Ethel's will conveyed. We first present the relevant portions of the will.

**A.    Ethel's Will**

The operative portions of Ethel's four-page will consist of four numbered paragraphs. Paragraphs 1 and 4 are not contested and are not relevant here. Paragraph 2 devises the surface estates. It divides the 1,065 acre tract between Inez and Dorothy by devising 600 acres to Inez and 465 acres to Dorothy; it also devises the 150 and 200 acre tracts to Howard. Paragraph 3 contains the provisions that are the source of this dispute; it reads in its entirety as follows:

3.

I will and bequeath to each of the above named children fee simple title to the lands designated to go to them, subject, however, to the following:

That *each of my children shall have and hold an undivided one-third (1/3) of an undivided one-eighth (1/8) of all oil, gas or other minerals in or under or that*

*may be produced from any of said lands*, the same being a non-participating royalty interest; that is to say, that neither of my children, to wit, Inez Hysaw Foote shall not participate in any of the bonus or rentals to keep any lease or leases in force; that it shall not be necessary for the said Inez Hysaw Foote to execute any oil, gas or mineral lease over the lands of Dorothy Frances Hysaw Burris or over the lands of Howard Caldwell Hysaw, Jr., and that it shall not be necessary for Inez Hysaw Foote to obtain the consent either orally or written of the said Dorothy Frances Hysaw Burris or Howard Caldwell Hysaw, Jr., to lease any portion of said land so willed to her for oil, gas or other minerals, but that the said *Inez Hysaw Foote shall receive one-third of one-eighth royalty*, provided there is no royalty sold or conveyed by me covering the lands so willed to her, and *should there be any royalty sold during my lifetime then the said Inez Hysaw Foote, Dorothy Frances Hysaw Burris and Howard Caldwell Hysaw, Jr., shall each receive one-third of the remainder of the unsold royalty*.

That Dorothy Frances Hysaw Burris shall not participate in any of the bonus or rentals to keep any lease or leases in force; that it shall not be necessary for the said Dorothy Frances Hysaw Burris to execute any oil, gas or mineral lease over the lands of Inez Hysaw Foote or over the lands of Howard Caldwell Hysaw, Jr., and it shall not be necessary for Dorothy Frances Hysaw Burris to obtain the consent, either orally or written, of the said Inez Hysaw Foote or Howard Caldwell Hysaw, Jr., to lease any portion of said land so willed to her for oil, gas or other minerals, but that the said *Dorothy Frances Hysaw Burris shall receive one-third of one-eighth royalty*, provided there is no royalty sold or conveyed by me covering the lands so willed to her, and *should there be any royalty sold during my lifetime then the said Dorothy Frances Hysaw Burris, Inez Hysaw Foote and Howard Caldwell Hysaw, Jr., shall each receive one-third of the remainder of the unsold royalty*.

That Howard Caldwell Hysaw, Jr., shall not participate in any of the bonus or rentals to keep any lease or leases in force; that it shall not be necessary for the said Howard Caldwell Hysaw, Jr., to execute any oil, gas or mineral lease over the lands of Inez Hysaw Foote or over the lands of Dorothy Frances Hysaw Burris, and it shall not be necessary for Howard Caldwell Hysaw, Jr., to obtain the consent, either orally or written of the said Inez Hysaw Foote or Dorothy Frances Hysaw Burris to lease any portion of said land so willed to him for oil, gas or other minerals, but that the said *Howard Caldwell Hysaw, Jr., shall receive one-third of one-eighth royalty*, provided there is no royalty sold or conveyed by me covering the lands so willed to him, and *should there be any royalty sold during my lifetime then the said Howard Caldwell Hysaw, Jr., Inez Hysaw Foote and Dorothy Frances Hysaw Burris shall each receive one-third of the remainder of the unsold royalty*.

(Emphasis added).  We address these three royalty provisions individually, and then consider them collectively with the remaining portions of the will.

**B.      Fractional Royalty or Fraction of Royalty**

We must decide what type of royalty interest Ethel's will conveyed: a fractional royalty—a fixed fraction of production—or a fraction of royalty—a percentage of whatever royalty the surface estate owner negotiated.  We recite examples of each type of interest.

*1.      Fractional Royalty Examples*

A fractional royalty conveyance transfers a fixed fraction of production of the minerals produced from the land irrespective of the percentage royalty in any subsequent lease; it "remains constant regardless of the amount of royalty contained in a subsequently negotiated oil and gas lease." *Coghill v. Griffith*, 358 S.W.3d 834, 838 (Tex. App.—Tyler 2012, pet. denied); *Range Res. Corp. v. Bradshaw*, 266 S.W.3d 490, 493 (Tex. App.—Fort Worth 2008, pet. denied).  The following examples convey a fractional royalty:

> (1)      A one-fourth royalty in all oil, gas and other minerals in and under and hereafter produced;
>
> (2)      A fee royalty of 1/32 of the oil and gas;
>
> (3)      An undivided one-sixteenth royalty interest of any oil, gas or minerals that may hereafter be produced;
>
> (4)      One-half of the one-eighth royalty interest;
>
> (5)      An undivided 1/24 of all the oil, gas and other minerals produced, saved, and made available for market;
>
> (6)      1% royalty of all the oil and gas produced and saved.

PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS, OIL AND GAS LAW § 327.1 (abridged 5th ed. 2013); *see also Coghill*, 358 S.W.3d at 838; *Range Res.*, 266 S.W.3d at 493.

*2.      Fraction of Royalty Examples*

Unlike a fractional royalty, a fraction of royalty conveyance "floats" in that it transfers a fraction of whatever royalty interest is reserved in the lease.  *Coghill*, 358 S.W.3d at 838; *Range Res.*, 266 S.W.3d at 493.  The following examples convey a fraction of royalty:

> (1)    1/16 of all oil royalty;
>
> (2)    The undivided 2/3 of all royalties;
>
> (3)    One-half interest in all royalties received from any oil and gas leases;
>
> (4)    An undivided one-half interest in and to all of the royalty;
>
> (5)    One-half of one-eighth of the oil, gas and other mineral royalty that may be produced.

PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS, OIL AND GAS LAW § 327.2 (abridged 5th ed. 2013); *see also Luckel*, 819 S.W.2d at 464; *Coghill*, 358 S.W.3d at 838; *Range Res.*, 266 S.W.3d at 493.

We turn now to the specific provisions in Ethel's will. We focus on Paragraph 3 because it contains three provisions that address the transfer of Ethel's royalty interests.

**C.    One-Third of One-Eighth of Minerals Provision**

The first royalty provision conveys a "non-participating royalty interest" as follows:

> "[E]ach of my children shall have and hold an undivided one-third (1/3) of an undivided one-eighth (1/8) of all oil, gas or other minerals in or under or that may be produced from any of said lands . . . ."

This language conforms with Williams & Meyers's fifth example of a fractional royalty conveyance:

> (5)    An undivided 1/24 of all the oil, gas and other minerals produced, saved, and made available for market;

PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS, OIL AND GAS LAW § 327.1 (abridged 5th ed. 2013).

The first provision also conforms with provisions other Texas courts have decided were fractional conveyances:

> "one-half of one-eighth of the oil, gas and other mineral royalty," *Harriss v. Ritter*, 279 S.W.2d 845, 846–47 (Tex. 1955);
>
> "one-half non-participating royalty interest (one-half of one-eighth of production)," *Moore v. Noble Energy, Inc.*, 374 S.W.3d 644, 645, 647 (Tex. App.—Amarillo 2012, no pet.); and

"1/9 of the 1/8 royalty, (1/72) of all the oil, gas and other minerals produced from said land," *Tiller v. Tiller*, 685 S.W.2d 456, 458 (Tex. App.—Austin 1985, no writ).

Thus, this first provision clearly and unambiguously describes a fractional royalty interest. *E.g.*, *Tiller*, 685 S.W.2d at 458. This provision, as applied to Inez, carves out of her lessor's interest two fractional royalties—fixed fractions of 1/24 of the minerals produced from her tracts: one for Dorothy and one for Howard. We turn now to the second provision.

**D.      One-Third of One-Eighth Royalty Provision**

The second royalty provision in Ethel's will reads as follows:

"[her child] shall receive one-third of one-eighth royalty."

This language conforms with Williams & Meyers's example (4) of fractional conveyances:

"(4) One-half of the one-eighth royalty interest."

PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS, OIL AND GAS LAW § 327.1 (abridged 5th ed. 2013).

This second provision also conforms with language other Texas courts have decided were fractional conveyances:

"undivided 1/40th royalty interest (being 1/5th of 1/8th)," *Hudspeth v. Berry*, No. 2-09-225-CV, 2010 WL 2813408, at *2–4 (Tex. App.—Fort Worth July 15, 2010, no pet.) (mem. op.);

"1/4 of the 1/8th royalty interest," *Hawkins v. Tex. Oil & Gas Corp.*, 724 S.W.2d 878, 889 (Tex. App.—Waco 1987, writ ref'd n.r.e.); and

"1/2 of the 1/8th royalty (same being a 1/16th of the total production) of oil, gas and minerals," *Helms v. Guthrie*, 573 S.W.2d 855, 857 (Tex. Civ. App.—Fort Worth 1978, writ ref'd n.r.e.).

Thus, this provision clearly describes a fractional royalty interest—a fixed fraction of production.

*E.g.*, *Hudspeth*, 2010 WL 2813408, at *2–4.

**E.      One-Third of the Remainder of Royalty Provision**

The third royalty provision in Ethel's will reads as follows:

"should there be any royalty sold during my lifetime then [each of my children] shall each receive one-third of the remainder of the unsold royalty."

This provision has a condition and a conveyance.

The condition was Ethel's sale, during her lifetime, of any royalty "covering the lands so willed to [her child]."  The condition was satisfied for two tracts by Ethel's *inter vivos* transfers, to each of her three children, of mineral interests in the 200 and 150 acre tracts.

The conveyance was of a share of "the remainder of the unsold royalty."  This conveyance language expressly contemplates that the unsold royalty will be something other than 1/8, and it equally divides whatever royalty remainder may exist among her three children.

This conveyance conforms with Williams & Meyers's examples (1)–(4) that transfer a fraction of some unknown future royalty:

> (1)      1/16 of all oil royalty;
> (2)      The undivided 2/3 of all royalties;
> (3)      One-half interest in all royalties received from any oil and gas leases; [and]
> (4)      (4) An undivided one-half interest in and to all of the royalty . . . .

PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS, OIL AND GAS LAW § 327.2 (abridged 5th ed. 2013).

This third royalty provision also conforms with language other Texas courts have decided were fraction of royalty conveyances:

"'one-fourth of any and all royalties reserved under' future leases," *Luckel*, 819 S.W.2d at 462–63;

"an undivided one-eighth (1/8) interest in and to all of the oil royalty [and] gas royalty," *Coghill*, 358 S.W.3d at 835–36, 838; and

"an undivided one-half (1/2) Royalty (*Being equal to not less than* an undivided one-sixteent[h] (1/16)[) ] of all the oil, gas and/or other minerals in, to, and under

or that may be produced from said . . . land," *Range Res.*, 266 S.W.3d at 493, 496 (alterations in original).

Thus, the third royalty provision, clear and unambiguous, conditionally conveys a fraction of royalty interest. *E.g.*, *Luckel*, 819 S.W.2d at 463.

## F.     Provisions Read Together

Having considered each provision separately, we now read them together along with the remainder of the will to determine whether any provision's plain language contradicts or is inconsistent with the others. *See Luckel*, 819 S.W.2d at 462.

We begin with the grant to each child of "fee simple title" in their respective surface estate. We add the three royalty provisions as we construe them: the first royalty provision as a fractional royalty, the second as an individualized restatement of the first, and the third as a conditional reservation of a fraction of royalty. Considering these provisions together, we conclude our construction does not create any contradictions or inconsistencies, or leave any portion of the estate unassigned.

Appellees reject this construction. They insist that reading the second provision as a fractional royalty creates a conflict in the will, and the third provision clearly shows Ethel's intent that all royalties be shared equally. We address each of Appellees' arguments in turn.

### 1.     *No Conflict from Second Provision as Fractional Royalty*

Appellees argue the second provision cannot be a fractional royalty because the will "cannot give Inez *all* of the royalty on her land and at the same time give her only 1/24 of that royalty." We disagree with Appellees' characterization.

As we read the provisions together, we understand Ethel's devise of "fee simple title" as giving all her rights in the surface estate and the accompanying mineral estate to each child, subject to the first provision's reservation of a fractional royalty—a fixed fraction of production—for each

of the other two children. The second provision, inserted after the reminder that the executive, bonus, and delay rental rights were given to the surface estate owner, simply restates the first provision's grant. There is nothing in the second provision's plain language that strips the surface estate owner of any royalty in excess of 1/24 of production. We do not read the second provision as limiting the surface estate owner's royalty to a maximum of 1/24 of production. As Appellees note, such a reading would create a conflict in the will's terms, and we should read the second provision as affirming, not contradicting, the earlier grant of fee simple title. *See Steger*, 134 S.W.3d at 372 ("Where practicable, a latter clause in a will must be deemed to affirm, not to contradict, an earlier clause in the same will."); *accord In re Estate of Slaughter*, 305 S.W.3d 804, 809 (Tex. App.—Texarkana 2010, no pet.). Thus, we read the second provision as an individualized restatement that affirms both the first royalty provision and the fee simple title devise. *See In re Estate of Slaughter*, 305 S.W.3d at 809; *Steger*, 134 S.W.3d at 372. Our view maintains harmony between all the will's provisions, and we decline to adopt Appellees' view.

We turn to Appellees' argument regarding Ethel's intent for equal sharing.

### 2. *Equal Sharing Limited by Condition*

Appellees also argue the will shows Ethel intended for each of her children to share equally in all the royalties under all circumstances. They emphasize the first provision's sharing of royalty by each child in the royalties from *all* the lands, equal sharing required by the third provision's fraction of royalty devise, and the understanding at the time Ethel's will was drafted that 1/8 was the usual royalty. They insist nothing in Ethel's will contemplated an unequal sharing of royalties.

But whatever subjective intent for distributing royalties one might discern from Ethel's will cannot overcome the clear and unambiguous language of the first and second provisions that describe a fractional royalty. *See Luckel*, 819 S.W.2d at 462 ("Even if the court could discern the actual intent, it is not the actual intent of the parties that governs, but the actual intent of the parties

*as expressed in the instrument as a whole . . . .*"); *Dahlberg v. Holden*, 238 S.W.2d 699, 701 (Tex. 1951) ("We must construe this language as it is written and we have no right to alter it by interpolation or substitution.").

Further, the third royalty provision is expressly conditional, and nothing in its language applies it, either conditionally or unconditionally, to any other provision.

In sum, we must "focus not on 'what [Ethel] intended to write, but the meaning of the words she actually used.'" *Lang*, 35 S.W.3d at 639 (quoting *Stahl*, 610 S.W.2d at 151). Here, regardless of what may have been her subjective intent, the words Ethel actually used are clear, and we are bound by that language.[2] *Id.* ("As [the Texas Supreme Court has] said on numerous occasions, 'The intent must be drawn from the will, not the will from the intent.'" (quoting *Lehman*, 668 S.W.2d at 688)). We are not free to alter the unambiguous language of a will's provision "under the guise of construction of the language of the will" to reach a *presumed* intent. *Id.*; *Parker v. Parker*, 131 S.W.3d 524, 532 (Tex. App.—Fort Worth 2004, pet. denied); *see Luckel*, 819 S.W.2d at 463; *Coleman*, 350 S.W.3d at 203.

## CONCLUSION

The facts concerning Ethel Nichols Hysaw's will were not disputed, and the trial court granted Appellees' traditional motion for summary judgment—which argued that Ethel's will provided for equal sharing of her royalty interest. Having reviewed Ethel's will de novo, we conclude its plain language devised all her rights in the specified surface estate—and its

---

[2] We understand the usual royalty in the 1940s was limited to 1/8 of production, and Ethel's will was likely drafted under that assumption. *See Luckel*, 819 S.W.2d at 462; *Garrett v. Dils Co.*, 299 S.W.2d 904, 907 (Tex. 1957); *Hausser v. Cuellar*, 345 S.W.3d 462, 468–69 (Tex. App.—San Antonio 2011, pet. denied). To honor what may have been Ethel's intent that her children share equally in all royalties from all tracts under all circumstances, the parties are free to share equally among themselves. But for this court to mandate equal sharing, we would have to rewrite the clear and unambiguous language of Ethel's devise of a fractional royalty—a fixed fraction of production—into a (floating) fraction of royalty. *See Luckel*, 819 S.W.2d at 462; *Dahlberg*, 238 S.W.2d at 701. We may not rewrite unambiguous provisions. *Luckel*, 819 S.W.2d at 462; *Dahlberg*, 238 S.W.2d at 701.

corresponding mineral estate—to each surface estate devisee subject to the two fractional royalty interests—fixed fractions of 1/24 of production—reserved for the devisee's siblings.  We also conclude that for the 200 acre and 150 acre tracts, each of Ethel's children are entitled to share equally in any and all royalty earned from those tracts.  Therefore, we reverse the trial court's judgment.

We render judgment that Inez's descendants and Dorothy's descendants are entitled to all of the royalty earned from the acreage devised to them except for the two fractional royalty interests—fixed fractions of 1/24 of production—reserved for the devisee's siblings.

Patricia O. Alvarez, Justice